OWEN OVERTON v. THE STATE.

1. THEFT BY HUSBAND OF WIFE'S SEPARATE PROPERTY.—Unless there has been a distinct and definite separation, and the husband has expressly or by direct implication abandoned possession of the wife's property and recognized her right to its exclusive possession while undivorced, the husband cannot be convicted of theft of the wife's separate property.

2. SAME.—See facts held insufficient to support a verdict of theft by husband of wife's property.

3. WIFE'S TESTIMONY AGAINST THE HUSBAND.—It is error to admit the testimony of the wife against the husband upon trial for theft of her property.

APPEAL from Bastrop. Tried below before the Hon. J. P. Richardson.

*J. P. Fowler*, for appellant.

*A. J. Peeler, Assistant Attorney General*, for the State.

MOORE, ASSOCIATE JUSTICE.—Appellant has been convicted and adjudged to imprisonment for five years in the penitentiary for theft of a mule, charged in the indictment to be the property of Maria Overton, who was, as is shown

by the record, his wife at the date of the supposed theft, as well as at the time of the trial.

It appears from the statement of facts that shortly before the alleged theft appellant and his wife had separated, and she had caused him to be arrested for an assault upon her. After their separation and before appellant's arrest, his wife, as she testifies, delivered the mule to Dan Duncan, the brother of her first husband, to whom it had belonged, to keep for their two children; and that Duncan placed it in the possession of one Bryant for the same purpose, by whom it was, with his consent, put in the field of one Jackson; and "somebody," say the witnesses, "stole it from the field," but by whom it was stolen no witness pretends to state, nor is there any explanation why they suppose it was, in fact, stolen, except that it has been subsequently in the possession and claimed by a lady living in the neighborhood; but from whom or how she got it, or how she claims it, is not stated.

The only circumstance tending to connect appellant with the theft, if, indeed, the mule was stolen, is contained in the evidence of the witness Duncan, who says: "About the time of the separation of appellant and his wife, and after she had placed the mule in his possession, when appellant was carried to Bastrop for whipping his wife, he rode the mule there, and rode it away when making his escape." But he further states that on the same day after he had seen the appellant have the mule, he, witness, asked him what he had done with it, and that he replied that he had turned it loose in the bottom. Witness did not, however, hunt for the mule in the bottom, because, as he says, he knew it was not there; but how he knew this fact he does not tell.

That this evidence is altogether insufficient to justify or support the verdict against appellant is quite too clear for argument.

We will not undertake in this case to decide whether a

husband separated from his wife, though not divorced, can commit theft of her separate property. If he may, it certainly must be where there has been a distinct and definite separation between them, and he has expressly or by direct implication abandoned or surrendered possession of the property and recognized her right to possess and control it. And the taking must unquestionably be shown to have been clearly with intent to deprive her of the value of the property and to convert it to his own use and benefit.

It does not appear from the evidence in this case that appellant was aware when he rode the mule that his wife intended to or had in fact taken the mule from his possession and control if she had the right to do so; or that he knew it had been delivered to Duncan; or was cognizant of the object and purpose for which it was placed in Jackson's field. The use which he made of the mule was open and public, and in the presence, most probably, of his wife, certainly in that of the party to whom she had delivered it, and was consistent with the right, as he may have supposed, to still control and manage it. It was also at a time when he may have imagined the difficulty between them might not result in final and permanent separation. His right to its possession and use seems not to have been then questioned or denied either by his wife or her agent. It is not shown that the account which he gave of his disposition of it was untrue or was an improper one.

The case, as presented in the record, is lacking in every essential ingredient necessary to constitute the offense of which appellant had been convicted, and the court erred in overruling his motion for a new trial.

The objection to the testimony of Maria Overton, the wife of appellant, was well taken, and should have been sustained. "The husband and wife can in no case testify against each other, except in a criminal prosecution for an offense by one against the other." (C. C. P., art. 648.) This provision of the code cannot, in our opinion, be prop-

erly given so broad an interpretation as to permit husbands and wives to testify against each other in prosecutions for offenses against their property. To give it such a construction would be to make a marked innovation upon a well established common-law rule of evidence not required or warranted by its language. There is nothing, we think, in the spirit and object for which this provision of the code was evidently designed which requires or should induce us to give it this interpretation. Its plain and obvious import is to limit the permission given to the husband and wife to testify against each other to prosecutions for personal offenses by one against the other.

The judgment is reversed.

REVERSED.