[No. 1363.]

## DANIEL COMPTON v. THE STATE.

1. INCEST—INDICTMENT.—See the opinion *in extenso*, for an indictment *held* sufficient to charge the offense of incest.
2. SAME—STATUTE CONSTRUED—EVIDENCE—CASES OVERRULED.—Article 735 of the Code of Criminal Procedure, which qualifies the husband or wife as a witness against the other in a criminal prosecution for an offense by one against the other, must be construed to limit that qualification to offenses committed by the one against the person of the other. Hence, it follows that the wife is not a competent witness against the husband in a prosecution against him for incest with her daughter and the step-daughter of the accused. And it seems that notwithstanding the decisions in *Morrill* v. *The State*, 5 Texas Ct. App., 447, and *Roland* v. *The State*, 9 Texas Ct. App., 277, the weight of authority is against the competency of husband or wife as a witness against the other in a prosecution for adultery; and those cases are therefore overruled. See the opinion *in extenso* on the subject.

APPEAL from the District Court of Robertson. Tried below before the Hon. W. E. Collard.

The opinion sets out the indictment, which charges the appellant with incest with Laura Griffin, the daughter of his wife, Mrs. Sarah Compton. The trial resulted in the conviction of the appellant, and the jury assessed his punishment at a ten years term in the penitentiary.

The written testimony of Mrs. Sarah Compton, taken before the examining trial was, in substance, that the defendant was her husband and Laura Griffin was her daughter by a former husband. The latter was fourteen years old in October, 1881, and lived with the witness until September, 1881, when she went to Waco with the defendant. The suspicions of the witness were aroused concerning the relations existing between her daughter and the defendant in July, 1881, by seeing the defendant go from Laura's bed at night, at a time when Laura was in bed. The witness did not see him go to her bed, nor did she know how long he stayed there. She saw him go to Laura's bed, at night, in July or September of the same year. On this occasion the witness made a fuss and turned over, and the de-

fendant turned around and went back.  She never saw the defendant get into Laura's bed or get out of it.  When the defendant brought Laura back from Waco he told the witness that when she gave him a divorce he would marry Laura.  She did not think Laura was pregnant.  Previous to the introduction of this written testimony the State, over objection by the defense, introduced the witness herself, and she denied having made before the examining court the statements contained in her written testimony.  This witness is held by this court to have been incompetent in this case.

Charles Griffin, a brother to Laura Griffin, testified, for the State, that he slept in the house on the night of the return of the defendant and Laura from Waco.  He saw the defendant and his sister Laura undress and go to bed together on a pallet on the floor, and they slept together that night.  The defendant had on his shirt and drawers, and Laura had on her chemise.  When the witness got up next morning they were still in bed together.  This was the only act of familiarity the witness had ever seen between them.

The substance of the testimony of State's witness, Wheelock, was that he met the defendant in Waco, in October, 1881, on which occasion the defendant told him that Laura Griffin was living with him in Waco, and that he wanted to marry her; that she was pregnant and he brought her to Waco by the request of his wife; that she was pregnant once before but miscarried; that he had often had carnal intercourse with her, the first time in a dug-out in his field in Robertson county.

For the defense, Mrs. Sarah Compton testified that the reason she permitted her daughter to accompany the defendant to Waco was to keep house for him and care for his children.  She denied that Laura had ever been pregnant, and declared that her monthly sickness had always been regular.

Laura Griffin, for the defense, denied that the defendant had ever had carnal knowledge of her.  She denied that undue familiarity had ever been practiced by him towards her.  She denied that she had ever been pregnant, and stated that her monthly periods had always been regular.

Mrs. Harper, a sister to the defendant, testified, in substance, that for four months while the defendant and Laura Griffin lived in Waco, she, the witness, and her husband occupied an adjoining room in the same house.  The defendant and Laura slept in the same room with the children, but always in different

beds.  She had seen them both go to bed often, and after they were in bed, and they always occupied different beds.  She had never seen anything like improper conduct between them.

The motion for new trial assailed the evidence as insufficient to support the verdict, and the finding of the jury as being contrary to the law of the case as well.  It complained of error in the court refusing to permit the defendant's counsel to read in argument to the jury Section 214 of the first volume of Greenleaf on Evidence, it being upon the weight of evidence and the force and effect of a confession by the defendant.  It complained further, that the court erred in compelling the witness Sarah Compton, the wife of the defendant, to give evidence and testify to material facts in favor of the State, over the defendant's objection.  Further, that the court erred in its charge to the jury, in that it failed to define to the jury the offense charged in the indictment.  It assailed the various paragraphs of the charge, *seriatim*, and proclaimed the charge as a whole a failure to embody the law of the case.  The motion was overruled.

No brief for the appellant has reached the Reporters.

*H. Chilton,* Assistant Attorney General, for the State.

WHITE, P. J.  A motion in arrest of judgment, which was overruled, questioned the sufficiency of the indictment upon which defendant was tried.  The crime intended to be charged was incest.  As set forth in the indictment, the charge is, "that about the first day of October, A. D. 1881, in Robertson county, Texas, and divers other days, both before and after said first day of October, 1881, Daniel Compton, an adult male person, did unlawfully and carnally know one Laura Griffin, a female person, over the age of ten years, the said Laura Griffin then and there being the daughter of Mrs. Sarah Compton, the lawful wife of him the said Daniel Compton, against the peace and dignity of the State."

In the absence of the specific objection which was urged, we presume that the insufficiency was supposed to exist in the failure to allege with certainty that, at the time the offense was committed, Mrs. Sarah Compton, the mother, was living, and was the lawful wife of defendant.  We do not think the objection tenable.  It was unnecessary to repeat the words "then and there being," after the words "the daughter of Mrs. Sarah

Compton." As used, they appear to refer as well to the fact that Mrs. Sarah Compton was "then and there" the lawful wife as to the fact that Laura Griffin was "then and there" her daughter, and they apply with equal force to both allegations. (*Harris* v. *The State*, 2 Texas Ct. App., 102.) If they apply to both, then the allegation in effect is that Mrs. Sarah Compton was not only the lawful wife, but was then and there living.

In the case of *Noble* v. *The State*, 22 Ohio State Reports, 541, it was held that the relation of step-father and step-daughter, within the meaning of the statute against incest, does not exist after the termination of the marriage relation between the step-father and the step-daughter's mother; but that an indictment for incest with one's step-daughter sufficiently describes the relationship of the parties by alleging it to be that of step-father and step-daughter, without setting forth the marriage of the defendant to the mother, or the subsistence of the marriage relation at the time of committing the crime." (1 Green's Crim. Law Rep., 662.) Our statutory words "his wife's daughter" (Penal Code, Art. 330), are, we think, substantially and sufficiently averred in the allegation contained in the indictment, viz., "the said Laura Griffin then and there being the daughter of Mrs. Sarah Compton, the lawful wife of him the said Daniel Compton." We are of opinion the indictment is sufficient to charge the statutory crime of incest, and the court committed no error in overruling the motion in arrest of judgment, so far as based upon objections to it.

On the trial Mrs. Compton, wife of defendant, was placed upon the stand by the prosecution as a witness against him. She was objected to by defendant as incompetent for the purpose under our statute, which provides that "the husband and wife may in all criminal actions be witnesses for each other, but they shall in no case testify against each other except in a criminal prosecution for an offense committed by one against the other." (Code Crim. Proc., Art. 735.) This objection was overruled, and the witness permitted to testify. In his ruling the learned judge doubtless was guided and controlled by two decisions of this court, the cases of *Morrill* v. *The State*, 5 Texas Ct. App., 447, and *Rowland* v. *The State*, 9 Texas Ct. App., 277, to the effect that adultery of one of the parties to the marriage contract was in its nature such a crime committed against the other as to render that other competent to testify against the offending party. If this doctrine was correct, then it would follow inevitably that in

a case of incest such testimony would be undoubtedly competent *a fortiori,* because to the wrong of adultery is added the double wrong and injury that it is an outrage upon nature in its dearest and tenderest relations, as well as a crime against humanity itself.

The question is, do the decisions in Morrill's and Rowland's cases lay down the correct rule, or is the doctrine as enunciated a strained and unwarranted construction of the language of the statute *supra?* The exception is that they are competent to testify in "prosecutions for an offense committed by one against the other." We are aware that the cases of Morrill and Rowland are not without authority to support them. Notably as in *Bennett* v. *The State,* 31 Iowa, 24, cited in Morrill's case, and in *Tilton* v. *Beecher,* a celebrated case of *crim. con.,* wherein the plaintiff was offered as a witness to prove his wife's adultery, and after elaborate argument and citation of authority the court held he was entitled to testify. (See note 6 to Whart. Crim. Ev., sec. 396.) Again, in *Sloan* v. *The People,* a case recently decided by the Supreme Court of Iowa, it was held that the first wife is a competent witness against her husband who has been indicted and is upon trial for bigamy, it being a crime committed against her. (2 Crim. Law Mag., 285.)

A more thorough investigation and consideration of the subject has, however, led us to conclude that the great weight of authority, English and American, is against the doctrine of the Morrill and Rowland cases, and appears to be more consonant with the reason and policy of the law. Before those decisions were rendered (a fact which seems to have been overlooked, at all events it is not noticed or alluded to in either of those opinions), our Supreme Court held, in construing this statute, that the wife could not testify against her husband upon trial for theft of her property; and the language used in reference to the meaning of the statute was that "its plain and obvious import is to limit the permission given to the husband and wife to testify against each other to prosecutions for personal offenses by one against the other." (*Overton* v. *The State,* 43 Texas, 616.)

Mr. Russell, in his work on Crimes, says: "The wife is also admitted as a witness against her husband *ex necessitate* in a prosecution of him for offenses against her person.   *   *   *   *   But this rule seems to be confined to cases where the charge affects the liberty or the person of the wife." (Sharswood's Russell, 2 vol., p. 984.)

Mr. Wharton says: "Marriage, however, being proved, neither husband nor wife is competent at common law to testify in a suit for or against the other. Thus the husband is incompetent in a prosecution against his wife for her adultery, and so, *mutatis mutandis*, is the wife against the husband; but if the paramour be prosecuted singly, it is held that the restriction does not continue in force." (Whart. Crim. Ev., sec. 390.) Again he says: "Where, however, violence has been committed on the person of the wife by the husband she is competent to prove such violence. Hence, on the trial of a man for the murder of his wife, her dying declarations are evidence against him. And in all cases of personal injuries committed by the husband or wife against each other the injured party is an admissible witness against the other. * * * * * And it is plain that in cases not involving personal injury the wife cannot at common law be called against her husband." (Sec. 392.)

And again: "The reason for the exclusion of husband and wife when called for or against each other being social policy and not interest, statutes abolishing incompetency resting on interest do not remove the common law incompetency of husband and wife for or against the other." (Sec. 400.) In New York it has been held that upon a trial of the husband for bigamy the wife was incompetent to testify against him. (24 New York, Hun., 501; Whart. Crim. Ev., 397.)

Our conclusion is that reason and the weight of authority is against the rule upon the subject as laid down in *Morrill* v *The State* and *Rowland* v. *The State*, and so those cases are overruled.

We are of opinion that Mrs. Compton was not a competent witness in the prosecution for incest against her husband, and that the objections to her testimony were improperly overruled. Other questions presented not incident to this are not deemed of sufficient importance to require discussion.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 18, 1882.