# Staunton

H. N. Meade v. Commonwealth of Virginia.

September 3, 1947.

Record No. 3235.

Present, Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*George M. Warren,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *W. Carrington Thompson, Assistant Attorney General,* for the Commonwealth.

Spratley, J., delivered the opinion of the court.

H. N. Meade was, on September 3, 1946, indicted for forgery, Virginia Code, 1942 (Michie), section 4889. The indictment contained two counts, one alleging the forgery of his wife's signature to a deed of bargain and sale, and the other the utterance of the forged instrument. Upon trial before a jury, the wife of the defendant was called as a witness for the Commonwealth, and, over the objection of the defendant, permitted to testify against him. Meade

was found guilty, and his punishment fixed at two years in the penitentiary.

Upon the refusal of the trial court to set aside the verdict as contrary to the law and the evidence, without evidence to sustain it, and because of the improper admission and exclusion of evidence, the defendant applied for and obtained this writ of error.

The competency of Mrs. Meade to testify as a witness against her husband, without his consent, is the principal question before us. In its consideration, only a brief summary of the evidence is required.

H. N. Meade and Missouri E. Meade were married March 1, 1916. They lived at various places in Southwest Virginia until June, 1942, when they moved to Bristol, Virginia. Meade was then physically unable to work, but Mrs. Meade was gainfully employed. In 1943, Mrs. Meade acquired title to a house and lot in Bristol, known as 1528 Fairmount avenue. A year later an adjoining lot was purchased in the joint names of herself and husband. She and her husband jointly or singly owned other real estate in the neighboring counties. Unable to get along together amicably, the couple separated in September, 1945. Mrs. Meade left Bristol, thereafter residing in several near-by towns, and finally at Akron, Ohio. In the meantime, negotiations for a property settlement between them were unsuccessful.

In June, 1946, Meade had his attorney, Mr. Stuart Carter, prepare for him three deeds of bargain and sale. In one of these deeds, the description of the property to be conveyed embraced the house and lot known as 1528 Fairmount avenue and the adjoining lot. The grantee therein was named as Margaret Couch, a sister of Mr. Meade. The purchase price was given as $10 and other valuable considerations. During the preparation of the deeds, Meade told Carter that he would arrange with Mrs. Meade to have the deeds signed; but that Mrs. Meade would like to have them executed secretly and in the nighttime.

Accordingly, on the night of June 7, 1946, between ten-

thirty and eleven o'clock, Carter, who was also a notary public, drove to 1528 Fairmount avenue in his automobile, where he picked up Meade. At Meade's direction, they then drove to a place on McNeil street in Bristol. When the automobile horn was blown, a woman appeared, who said that she was Missouri Meade. To satisfy Carter as to her identity, she produced a social security card issued to Missouri Robinson Meade. The deed for the Fairmount avenue property, dated June 7, 1946, already signed in the names of H. N. Meade and Missouri Meade, was presented to her. She was asked if she acknowledged the signed name of Missouri Meade as her signature, and she replied that she did. At Meade's direction, Carter then handed that person two packages of money and a check. She took the check and left. Carter drove Meade to the latter's home, completed the notary certificate to the deed, and left it with Meade.

On the next day, June 8th, the deed conveying the property on Fairmount avenue to Margaret Couch was delivered by Meade to the Clerk of the Corporation Court of the City of Bristol for recordation. It was duly recorded, and a few days thereafter Meade called at the clerk's office and the original deed was given to him. Subsequently, Meade entered into negotiations for a sale of the property to Mr. and Mrs. Paul Elsea for a consideration of $3,000. Although a deed was drawn for the sale, the sale was not effected. At that time Meade was occupying one or two rooms in the house on Fairmount avenue and the residence was rented to Mr. and Mrs. Elsea.

Mrs. Pauline Noe testified that Meade had once offered her five dollars to sign Mrs. Meade's name to a paper which appeared to be a deed; but that she declined to do so.

The Commonwealth then called Mrs. Missouri Meade as a witness against her husband. Notwithstanding a vigorous objection by counsel for Meade that she was incompetent to testify against her husband, under the rules of evidence and section 6211 of the Code of Virginia, 1942 (Michie),

she was permitted to testify. Counsel duly excepted to the ruling, and subsequently moved, unavailingly, that her testimony be stricken.

Mrs. Meade testified that on August 12, 1946, she first learned from an attorney, who had represented her in the attempt to settle her property rights with her husband, that the deed of June 7, 1946, purporting to convey the Fairmount avenue property, to Mrs. Couch had been executed and recorded. She immediately returned to Bristol from Akron, and communicated with her counsel and the Commonwealth's Attorney. She directly and positively denied that she had either signed the deed of June 7, 1946, or acknowledged her name signed to it, or authorized anyone to so act for her.

Mrs. Meade further said that she had received three social security cards at different times. She lost one in Tennessee, and in applying for a second she directed that it be sent to 1528 Fairmount avenue, Bristol, Virginia. She did not receive the second card; but subsequently got the third one in July, 1946, while she was in Akron, Ohio.

Mr. Stuart Carter was unable to identify Mrs. Missouri E. Meade as the person who appeared before him on the night of June 7, 1946, at the time he took the acknowledgments of the signatures on the deed in question.

Upon a search of the premises occupied by Meade, none of the deeds mentioned was found. He told the police officers that they had been stolen from him. Meade did not testify upon his trial.

At common law, neither husband nor wife was a competent witness in a criminal action against the other, except where the crime was committed against the one testifying. The test was whether the offense amounted to personal violence or a physical assault upon the other. The exception was based upon the necessities of justice. *Stein* v. *Bowman*, 13 Pet. (U. S.) 209, 222, 10 L. Ed. 129, 135; *Bassett* v. *United States*, 137 U. S. 496, 11 S. Ct. 165, 34 L. Ed. 762; *Davis* v. *Commonwealth*, 99 Va. 838, 38 S. E. 191.

"This rule is founded upon the deepest and soundest principles of our nature, principles which have grown out of those domestic relations that constitute the basis of civil society, and which are essential to the enjoyment of that confidence which should subsist between those who are connected by the nearest and dearest relations of life. To break down or impair the great principles which protect the sanctities of husband and wife, would be to destroy the best solace of human existence." *Stein* v. *Bowman, supra.*

In Virginia, the common law continues in full force, except in those respects wherein it has been altered by the General Assembly. Virginia Code, 1942 (Michie), section 2; *Elliott* v. *Commonwealth*, 172 Va. 595, 1 S. E. (2d) 273.

The General Assembly of Virginia in 1894, Acts of Assembly 1893-94, chapter 619, page 723, altered the common law rule as follows:

"In criminal cases husband and wife shall be allowed to testify in behalf of each other, but neither shall be compelled to testify against the other. If either, however, be examined in any case as a witness in behalf of the other, the one so examined shall be deemed competent to testify in such case as well against as in behalf of such other; but the failure of either husband or wife to testify shall create no presumption against the accused nor be the subject of any comment before the court or jury by the prosecuting attorney."

In 1898, in an amendment of chapter 619 of Acts of Assembly of 1893-94, the above provision was reenacted in the same language. Acts of Assembly 1897-98, chapter 703, page 754.

By Acts of Assembly 1901-02, chapter 673, pages 798, 799, the first sentence of the provision was amended by adding after the phrase, "but neither shall be compelled," the words "nor, without the consent of the other, allowed to testify against the other." With this change the provision appeared as a portion of section 3346a, Code of Virginia, 1904.

The revisors of the Code in 1919 made some changes in the law governing the competency of witnesses to testify, and these appear in the Code of 1919. However, the second paragraph of section 3346a of the Code of 1904 was, with only a slight and immaterial change in its verbiage and punctuation, reenacted as section 6211, Code of 1919, in the same language as now appears in section 6211, Michie's Code of 1942, as follows:

"In criminal cases husband and wife shall be allowed, and subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor without the consent of the other, allowed to be called as a witness against the other except in the case of a prosecution for an offense committed by one against the other, but if either be called and examined in any case as a witness in behalf of the other, the one so examined shall be deemed competent, and subject to the exception stated in the next section, may be compelled to testify against the other under the same rules of evidence governing other witnesses. The failure of either husband or wife to testify, however, shall create no presumption against the accused, nor be the subject of any comment before the court or jury by the prosecuting attorney. In the prosecution for a criminal offense committed by one against the other, each shall be a competent witness except as to privileged communications."

In *Davis* v. *Commonwealth, supra,* decided in 1901, this court held that the Act of 1897-98, then in force, did not change the common law rule as to the competency of a wife to testify against her husband relative to offenses committed by him on her. There we said:

"It is plain that it was the intention of the Legislature that the statutory restrictions upon the competency of husband and wife to testify in behalf or against each other, and upon the revealing in testimony by the one against the other of communications by the one to the other during marriage, or after the marriage relation ceases, shall not

apply to proceedings for a criminal offense committed by one against the other, but as to such proceedings to leave the existing rules of evidence unchanged, i. e., as at common law."

 Code, section 6211 is a statute of general exclusion, subject to an exception, and it cannot be broadened unless the extension is clearly covered by the exception. The only material change in the statute since 1898 has been the addition of the words, "nor without the consent of the other, allowed to be called as a witness against the other." The addition relates merely to the question of consent and enlarges the exception only when consent is given.

Since the enactment of Code, section 6211, the strictness of the common law rule has been recognized in Virginia. Acts of Assembly of 1918, page 761, and Acts of Assembly of 1922, page 842, now embodied in section 1941 of Virginia Code, 1942 (Michie), provide that "both husband and wife shall be competent witnesses to testify against each other" in cases of "desertion, or of neglect of wife, child or children." By section 4579 of Code, 1942, Acts of Assembly 1910, page 252, a wife is made competent to testify against her husband in a case of pandering.

Only two cases involving forgery of the signature of husband or wife by the other have been cited in the briefs. The decision in each of these cases is adverse to the contention of the Commonwealth.

In *Molyneux* v. *Willcockson,* 157 Iowa 39, 137 N. W. 1016, 41 L. R. A. (N. S.) 1213, the husband was charged with a forgery of certain instruments purported to be signed by the wife and husband. There the statute contained a provision similar to that of Virginia, which provided, in part, that: "Neither the husband nor wife shall in any case be a witness against the other, except in a criminal prosecution for a crime committed one against the other, * * *." The court held that the wife could not testify against the husband, because the forgery purporting to impose upon her a pecuniary liability was not a crime against

her within the meaning of the statute permitting her to be a witness against him in case of a crime committed against her.

"The fraud involved consists in the intent to injure the person who may be induced to accept as valid an instrument which is without legal validity. The natural effect of the forgery of the wife's name to the instrument would not be to render her liable thereon, for no liability of the wife would thus be created, but to defraud a person who was induced to accept it, relying upon the genuineness of her signature. We think it is quite evident, therefore, in the nature of things, that the crime charged against the husband was not one committed by him against his wife, but rather one committed by him against the person to whom the forged instruments were delivered, or intended to be delivered, to his injury."

In *People* v. *Ernst*, 306 Ill. 452, 138 N. E. 116, a husband was indicted for the forgery of his wife's name on a promissory note. Adhering to the common law rule, it was held that the wife was not competent as a witness against him.

In *Overton* v. *State*, 43 Tex. 616, the defendant was charged with the theft of a mule belonging to his wife. The Texas court held, under a statute similar to that of Virginia, that it was error to allow her to testify against her husband.

A number of cases have been cited to us which involve offenses against the marital rights or interest of the innocent spouse, especially sexual crimes. In such cases there is a decided conflict of authority as to whether the particular statutory exception to the common law rule enlarged the scope of the original exception. Some courts hold that any offense indirectly or remotely affecting the marital peace comes within this exception. Others confine the exception to the rule that the injury must amount to a physical wrong upon the innocent spouse. A third group makes the exception apply to a direct infringement upon the marital

rights of the injured spouse. None, so far as we are advised, has gone so far as to hold that husband or wife may testify against the other for theft of the property of the opposite person. Annotations 4 A. L. R., page 1069, and 135 A. L. R., page 138; Wigmore on Evidence, 3rd Ed., 1940, Vol. II, page 252, *et seq.*

Professor Wigmore in his excellent work on Evidence, 3rd Ed., Vol. VIII, page 221, *et seq.,* vigorously attacks the privileges granted by the common law rule and the reasons upon which the rule is based. We are not, however, called upon to pass upon the reasons for the rule, or the wisdom of the law. A lack of good reason may be ground for the legislature to change the law; but we must construe the law as it is.

In discussing the common law rule as to the competency of the husband and wife to testify one against the other, in a criminal case, in *Bassett* v. *United States, supra,* this is said:

"We do not doubt the power of the legislature to change this ancient and well supported rule; but an intention to make such a change ought not to be lightly imputed. It cannot be assumed that it is indifferent to sacred things, or that it means to lower the holy relations of husband and wife to the material plane of simple contact. So, before any departure from the rule affirmed through the ages of the common law—a rule having its solid foundation in the best interests of society—can be adjudged, the language declaring the legislative will shall be so clear as to prevent doubt as to its intent and limit."

In conclusion, we find, in our statute, no language save that relating to consent, which broadens the common law rule that neither husband nor wife may be called as a witness against the other, except in the case of a prosecution for an offense committed by one against the other.

The words "offense" and "criminal offense" are used interchangeably in our statute. As used, they mean a "prosecution for a criminal offense," and not a proceeding based merely on a private wrong.

· In view of what we have said, it is unnecessary to consider the remaining assignments of error.

■ Mrs. Meade was incompetent to testify against her husband. For this reason, the judgment against the defendant must be reversed. The case is remanded for such proceedings as may be deemed necessary and proper under the circumstances.

*Reversed and remanded.*