## Richmond

ALVIN EDWARD DOUGLAS BROWN

V.

COMMONWEALTH OF VIRGINIA

June 18, 1982.

Record No. 810647.

Present: All the Justices.

*Robert E. Evans (Kizer, Phillips & Petty*, on brief), for appellant.

Jerry P. Slonaker, Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In four counts under one indictment, Alvin Edward Douglas Brown was charged with committing, on August 22, 1980, the malicious wounding of his estranged wife, Norma H. Brown, the murder of her grandmother, Anna E. Hubbard, and the use of a firearm in the commission of each offense. The trial court granted Brown's motion for a separate trial of the charges relative to the murder of Hubbard. In a jury trial on the other charges, Norma testified against him and Brown was convicted and sentenced to confinement in the penitentiary in accordance with the jury verdict.

Over Brown's objection, the trial court granted the Commonwealth leave to amend the indictment against Brown charging him with commission of the offenses against Hubbard. The amended indictment returned by the grand jury read as follows:

The Grand Jury charges that:

On or about August 22, 1980, in the County of Campbell, ALVIN EDWARD DOUGLAS BROWN, during the felonious and malicious shooting of Norma H. Brown with intent to maim, disfigure, disable or kill her, unlawfully and feloniously did kill and murder Anna E. Hubbard, in violation of Section 18.2-30 of the Code of Virginia as punishable by Section 18.2-32 of the Code of Virginia, against the peace and dignity of the Commonwealth.

*SECOND COUNT*

The Grand Jury charges that:

On or about August 22, 1980, in the County of Campbell, ALVIN EDWARD DOUGLAS BROWN, during the felonious and malicious shooting of Norma H. Brown with intent to maim, disfigure, disable or kill her, unlawfully and feloniously did use a firearm while committing a felony of murder in violation of Section 18.2-53.1 of the Code of Virginia, against the peace and dignity of the Commonwealth.

The Commonwealth filed a motion to allow Brown's wife to testify against him on the ground that Brown had killed Hubbard by mistake while attempting to wound or kill Norma, and that under Code § 19.2-271.2[1] Norma could testify against him as for an offense committed against her. Over Brown's objection, the trial court granted the motion, and in the jury trial Norma testified as the principal witness for the Commonwealth. Convicted of second-degree murder for the slaying of Hubbard, Brown was sentenced to confinement in the penitentiary for ten years.[2] We granted him an appeal limited to the question whether the trial court erred in ruling that his wife could testify against him.

After Brown and his wife separated about July 8, 1980, she and Nikki, their three-year-old daughter, resided in Hubbard's home in Brookneal. The Browns were not divorced.

The Commonwealth's evidence showed that on August 22, 1980, shortly after 9:00 p.m., Brown, accompanied by a female companion, parked his station wagon in front of the Hubbard residence. Leaving his friend in the car, Brown entered the house and played with Nikki in the basement in the presence of Hubbard. There was evidence that Brown enjoyed a good relationship with Hubbard.

Norma testified that upon her return from a neighbor's house, she joined Nikki, Hubbard, and Brown, and conversed briefly with Brown about bills; she noticed that he had been drinking, but he was not intoxicated and there was no argument. When Brown left the house some ten minutes later, Norma went upstairs to get something from her bedroom. On the way, observing that the storm door at the entrance was not closed, she walked over to close it and saw Brown running back to the house with "something long in his hand." Anticipating trouble, she ran into her bedroom and shut the door, but Brown pulled it open and she saw that he was carrying a "long" gun. Norma "hollered loud," Hub-

---

[1] Code § 19.2-271.2 provides in pertinent part:

"In criminal cases husband and wife shall be allowed, and subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor, without the consent of the other, allowed to be called as a witness against the other, except in the case of a prosecution for an offense committed by one against the other . . . . In the prosecution for a criminal offense committed by one against the other . . . each shall be a competent witness except as to privileged communications."

[2] The charge of using a firearm in the commission of the murder was not submitted to the jury.

bard came upstairs with Nikki and remonstrated with Brown, Norma attempted to flee, and Brown, who was standing near her grandfather's cot,[3] began to shoot. Wounded in her arm by the first shot, Norma fell to the floor. She heard five or six more shots fired in rapid succession; one grazed her head. Her grandmother fell on her.[4] Brown left the premises immediately after the shooting.

Norma asserted that Brown twice had threatened to kill her; the first time he threatened her, she moved with Nikki to Hubbard's house. Another witness testified that she had heard Brown threaten to kill Norma about two weeks before the shooting.

Investigating officers arrested Brown the evening of the shooting. They found a rifle containing one unfired .22-caliber cartridge in Brown's car, two expended .22-caliber cartridge cases at the scene of the shooting, and a box of 50 unfired .22-caliber cartridges on Brown's person. Forensic evidence established that the two expended cartridges had been fired in Brown's rifle. It could not be conclusively determined that the mutilated .22-caliber bullet removed from Hubbard's body had been fired from the same rifle.

We need not review Brown's evidence, consisting of his testimony and that of his female companion, in support of his contention that he acted in self-defense. This evidence was rejected by the jury. Although he testified that Norma had threatened him, Brown conceded that he got along well with Hubbard.

█ Brown, relying on *Jenkins* v. *Commonwealth*, 219 Va. 764, 250 S.E.2d 763 (1979), argues that his wife could not properly testify against him at his trial under an indictment charging him with the murder of a third party, even though the offense arose out of the same transaction in which he committed an offense against his wife. He says that the evidence does not show a transferred intent,[5] and that the language in the amended indictment relating the killing of Hubbard to the malicious wounding of Norma was mere surplusage which did not change the nature of

---

[3] Norma's grandfather, an invalid, was in the house. He was not injured in the shooting but died of natural causes the same month.

[4] It was stipulated that Hubbard was killed by a gunshot wound to her head.

[5] The principle of transferred intent applies where an accused intends to kill one person but inadvertently kills another. *See C. A. Jones* v. *Commonwealth*, 217 Va. 231, 236, 228 S.E.2d 127, 130 (1976).

the prosecution. He maintains that he could only be convicted under the amended indictment of an offense against Hubbard.

In *Jenkins*, the defendant fired a shotgun at his estranged wife as she was riding as a passenger in a car. The shot, however, struck and killed her male companion, the driver of the vehicle. Jenkins was first charged with the attempted murder of his wife, but the Commonwealth elected not to prosecute that charge and it was dismissed. Thereafter, Jenkins was tried under the theory of transferred intent for the murder of the victim under an indictment that did not allege or refer to any offense against his wife. We held that the trial court erred in permitting his wife to testify as a witness against Jenkins in his trial under that indictment and under the indictment charging him with use of a firearm in the commission of that offense. Although we reaffirm the conclusion reached in *Jenkins*, we believe that our ruling therein should be limited to the peculiar circumstances and procedural posture of that case.

There was evidence in the present case from which the jury reasonably could find that Brown murdered Hubbard inadvertently while attempting to kill Norma. The trial court instructed the jury on transferred intent and the Commonwealth's Attorney argued this theory to the jury.

Code § 19.2-271.2 should be given a reasonable construction. It is not a penal statute that must be construed strictly against the Commonwealth. Code § 19.2-271.1 provides that husbands and wives are competent witnesses to testify for or against each other in criminal cases except as otherwise provided. The exceptions are included in § 19.2-271.2. Therefore, competency is the general rule and disqualification is the exception. We agree with the rationale of the Supreme Court that "[t]estimonial exclusionary rules and privileges," which impair the right of the public to have all relevant evidence introduced in the fact-finding process, should be strictly construed. *Trammel* v. *United States*, 445 U.S. 40, 50 (1980). In that case, the Supreme Court in its rule-making function curtailed the spousal privilege in federal criminal trials by holding that henceforth only the witness-spouse may invoke the privilege of declining to testify against the defendant-spouse.

In *Meade* v. *Commonwealth*, 186 Va. 775, 43 S.E.2d 858 (1947), we held that under the predecessor statute to § 19.2-271.2 a wife could not testify against her husband in his prosecution for

forging her signature to a deed and uttering the instrument. Reviewing its history, we stated that the statute was one of "general exclusion, subject to an exception," and could not be broadened unless the extension was "clearly covered by the exception." *Id.* at 782, 43 S.E.2d at 861. To the extent that the foregoing language conflicts with the views herein expressed it is overruled.[6] During the years that have intervened since *Meade* was decided, other exceptions have been included in the statute. *See Jenkins*, 219 Va. at 767, 250 S.E.2d at 765. Whatever justification formerly may have existed for a strict construction of the statute no longer obtains.

In the present case, the Commonwealth sought to try at one time all four counts under the original indictment against Brown. The trial court, in the exercise of discretion pursuant to Rule 3A:13(b), severed the cases for trial. Norma testified against Brown in the prosecution of her estranged husband for maliciously wounding her and using a firearm in the commission of that offense, and Brown was convicted. The indictment was then amended to show that Brown's murder of Hubbard and use of a firearm in committing that offense occurred when he was attempting to kill Norma. There were four offenses charged that comprised one continuing criminal enterprise in which Brown directed violence against his wife.

In *State* v. *Briley*, 53 N.J. 498, 251 A.2d 442 (1969), the Supreme Court of New Jersey construed a statute allowing a wife to testify against her husband when "the accused is charged with an offense against the spouse." 53 N.J. at 501, 251 A.2d at 443-44. The court held that where there was an integrated criminal transaction and the husband is charged with multiple offenses, one of which is against his wife, she can testify against him as to all the charges, whether the charges are tried separately or in one proceeding. In *Briley*, the defendant was charged in two counts under one indictment with murder of a third party and "atrocious assault and battery" upon his wife in one continuous transaction. *Id.* 53 N.J. at 501, 251 A.2d at 443. A motion to sever the counts for trial was denied, the wife testified against her husband in the prosecution of both charges, and the trial court's ruling that permitted her to testify was affirmed on appeal.

---

[6] For further discussion of *Meade*, see *Hudson* v. *Commonwealth*, 223 Va. 595, 292 S.E.2d 317 (1982) (this day decided).

Applying the reasoning of the New Jersey court in *Briley*, the Supreme Court of Washington reached the same result in *State v. Thompson*, 88 Wash.2d 518, 564 P.2d 315 (1977) (*en banc*). The Washington statute provided that the spousal privilege applied except "to a criminal action or proceeding for a crime committed by one against the other." 88 Wash.2d at 522, 564 P.2d at 317. The court held that the accused's wife could testify against him on the charge of murder of a third party, her lover, as well as the charge of assault upon her. *See also Commonwealth v. Galloway*, 271 Pa. Super.305, 413 A.2d 418 (1979); Annot., 36 A.L.R.3d 820.

Where one spouse has testified in a criminal prosecution against the other, whatever marital harmony once existed has been dissipated,[7] and the spousal privilege no longer serves a useful purpose. Accordingly, we hold that where one spouse is indicted for an offense against the other and an offense against a third party, and both offenses arose from a common criminal enterprise, the witness-spouse can testify against the defendant-spouse in the prosecution of both charges.

Finding no error in the ruling of the trial court that permitted his wife to testify against Brown in the trial of the charge of murder under the amended indictment, we will affirm the judgment.

*Affirmed.*

STEPHENSON, J., concurring.

While I agree with the majority's holding, I do not agree that *Jenkins v. Commonwealth*, 219 Va. 764, 250 S.E.2d 763 (1979), is distinguishable. Therefore, I would overrule *Jenkins*.

POFF, J., joins in concurring opinion.

---

[7] In *Stewart v. Commonwealth*, 219 Va. 887, 252 S.E.2d 329 (1979), we held that the spousal privilege did not survive the entry of an *a mensa* divorce decree.