COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Clements and Kelsey
Argued at Salem, Virginia


GARY ANTHONY PRYOR

OPINION BY
v.      Record No. 0784-05-3      JUDGE D. ARTHUR KELSEY
APRIL 4, 2006

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Thomas H. Wood, Judge

William E. Bobbitt, Jr. (Office of the Public Defender, on brief),
for appellant.

Virginia B. Theisen, Assistant Attorney General (Judith
Williams Jagdmann, Attorney General, on brief), for appellee.


A jury found Gary Pryor guilty of first-degree murder and abduction. On appeal, he

claims his abduction conviction should be vacated because his physical restraint of the victim

served only as a prelude to her murder. Pryor also contends both convictions should be

overturned because the trial court violated Code § 19.2-271.2 by admitting into evidence the

testimony of Pryor's wife previously given at his preliminary hearing. Finding no merit in either

assertion, we affirm both convictions.

I.

Under settled principles, we review the evidence in the "light most favorable" to the

Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

That principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270

S.E.2d 755, 759 (1980) (emphasis and citation omitted).

On the day of her murder, Lisa Johnson was visiting the mobile home of Gary and Mary Pryor. While there, Johnson and the Pryors used illegal drugs. When Johnson tried to leave without paying for the drugs, Gary Pryor fought with Johnson. After Johnson fell to the ground, Gary Pryor "went down on top of her and held her." While detaining Johnson in this way, Gary Pryor instructed his wife to "get him the tape to tape her." Mary Pryor complied, and Gary Pryor taped Johnson so she could not escape. Gary Pryor then left Johnson momentarily to retrieve a plastic bag. He returned to Johnson and used the bag to smother her to death.

Gary and Mary Pryor later dumped Johnson's body over the side of North Mountain near Buffalo Gap. A witness saw the Pryors and their vehicle shortly after they discarded Johnson's body. The witness also found Johnson's still-warm body and summoned the police. Upon a search of the Pryors' mobile home, the police found Johnson's personal identification, jewelry, and underwear in a plastic bag. The police also found traces of Johnson's blood as well as pieces of tape used to restrain Johnson prior to her death. Later forensic testing identified Johnson's hair fibers on the tape. After apprehending the Pryors in Michigan, the police found a bed sheet stained with Johnson's blood a few miles from where her body had been dumped.

At Gary Pryor's preliminary hearing, Mary Pryor elected to testify against her husband. Proclaiming "I'm sorry, Gary. I have to tell the truth," she asserted no testimonial or evidentiary privilege of any kind. She gave sworn testimony describing in detail both the murder and the effort to hide Johnson's body. Most of the specifics of the murder came out during cross-examination by Gary Pryor's counsel.

At the later jury trial, the Commonwealth called Mary Pryor as a witness. She refused to take the stand, invoking the marital testimonial privilege of Code § 19.2-271.2. At the Commonwealth's request, the trial court declared Mary Pryor unavailable as a witness and

allowed her prior testimony to be read to the jury. In response, Gary Pryor testified that his wife accidentally suffocated Johnson to death during a scuffle between the two. After testifying, Gary Pryor rested his case. The jury found him guilty of first-degree murder and abduction.

II.

### A. MURDER & THE BROWN ABDUCTION DOCTRINE

Relying on Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985), Pryor contends his abduction conviction must be reversed as a matter of law. Even accepting the Commonwealth's evidence at face value, Pryor argues, his physical restraint of Johnson before her suffocation was simply a brief prelude to the murder — a merely "incidental" detention that cannot be separately criminalized as an abduction. We disagree.

In Brown, the defendant argued that double jeopardy principles forbid the coupling of an abduction conviction with related rape and forcible sodomy convictions when the conduct arose "out of the same criminal episode." Id. at 311-12, 337 S.E.2d at 712. Brown resolved the "constitutional problem" by holding that the General Assembly authorized a separate punishment for abduction so long as it did not involve the "kind of restraint which is an *intrinsic element* of crimes such as rape, robbery, and assault." Id. at 313-14, 337 S.E.2d at 713 (emphasis added). Applying that principle to the facts, Brown found that "the record before us shows that the detention underlying the abduction conviction was not the kind of restraint that is *inherent in the act of rape*." Id. at 314, 337 S.E.2d at 714 (emphasis added). Because the "acts of force and intimidation employed in the abduction were separate and apart from the restraint *inherent in the commission of the rape*," id. (emphasis added), the multiple-punishment challenge failed.

We recently confirmed our understanding of Brown in just these terms. "Under this principle, a defendant 'charged with abduction by detention and another crime that factually

includes restraint of the victim (*e.g.*, rape or robbery)' as a matter of law cannot 'be convicted of both unless the abduction-detention is factually distinct from the restraint inherent in the other crime.'" Walker v. Commonwealth, 47 Va. App. 114, 123, 622 S.E.2d 282, 286-87 (2005) (quoting Roger D. Groot, Criminal Offenses & Defenses in Virginia at 3 (5th ed. 2005) (emphasis omitted)). In this way, Brown focuses not on whether the restraint was merely useful to perpetrating a detention-plus crime — but whether the restraint was "intrinsic" to, Cardwell v. Commonwealth, 248 Va. 501, 511, 450 S.E.2d 146, 152 (1994), or "inherent" in, Bell v. Commonwealth, 22 Va. App. 93, 97, 468 S.E.2d 114, 116 (1996); Coram v. Commonwealth, 3 Va. App. 623, 625-26, 352 S.E.2d 532, 533 (1987), the detention-plus crime.

No Virginia case has ever held that the Brown multiple-punishments principle applies to abduction coupled with homicide. The first time such an assertion was ever made, the Virginia Supreme Court summarily dismissed it with the observation that restraint "is not a necessary element of homicide. Thus, [defendant's] contention that the restraint of [victim] was not more than what was necessary incident to his attempt to kill her is without merit." Powell v. Commonwealth, 261 Va. 512, 541 n.11, 552 S.E.2d 344, 360 n.11 (2001). This makes a great deal of sense, given that an abduction preceding a murder can never be said to be legally "inherent in the act" of murder. See Brown, 230 Va. at 314, 337 S.E.2d at 714; see also Jerman v. Dir., Dept. of Corr., 267 Va. 432, 440, 593 S.E.2d 255, 260 (2004) (dismissing habeas complaint on the ground that abductions immediately preceding and following a murder cannot, as a matter of law, be "inherent in the act of murdering").[1]

---

[1] To be sure, even when abduction serves as a predicate offense for felony murder, double jeopardy principles do not preclude separate convictions (and thus multiple punishments) for both murder and abduction. See Spain v. Commonwealth, 7 Va. App. 385, 392, 373 S.E.2d 728, 731-32 (1988) (relying on Fitzgerald v. Commonwealth, 223 Va. 615, 637, 292 S.E.2d 798, 811 (1982)).

Maybe not, Pryor argues, but as a practical matter some murders do involve a form of simultaneous physical restraint. A murder victim stabbed multiple times would likely find, during the time between each penetration of the blade, her freedom of movement restrained as a result. Similarly here, Pryor continues, Johnson did not die at the very moment he placed the plastic bag over her mouth and nose. The process of asphyxiation took some measurable period of time to shut down her internal organs sufficient to cause her death. This period of restraint cannot be separately criminalized under the abduction statute, Pryor concludes.

We need not address this argument since it posits a wholly hypothetical situation. In this case, Pryor physically held Johnson down on the ground while his wife obtained the requested tape. When she returned with the tape, Pryor taped Johnson so she could not escape while he went to retrieve a plastic bag to smother her with. An abduction occurred *before* Pryor sealed off Johnson's airways with the plastic bag and began the process of suffocating her to death. Had he relented at the last moment and decided against murdering Johnson, Pryor could have been convicted of an abduction based upon what he had already done. An abduction conviction "requires only a showing of 'physical detention of a person, with the intent to deprive him of his personal liberty, by force, intimidation, or deception' without more." Walker, 47 Va. App. at 120, 622 S.E.2d at 285 (citation omitted).

Based on the logic of Brown and the holding of Powell, we conclude that an abduction preceding a murder may lead to separate convictions for each. The trial court in Pryor's case, therefore, did not err in refusing to set aside the abduction conviction.[2]

---

[2] For these reasons, we see no need to analyze the detention dissimilarity factors outlined in Hoyt v. Commonwealth, 44 Va. App. 489, 605 S.E.2d 755 (2004). Hoyt did not apply Brown to an abduction preceding a murder or discuss any legal precedents that did.

B. <span class="smallcaps">MARITAL TESTIMONIAL PRIVILEGE</span>

Pryor also argues that the trial court erroneously admitted into evidence his wife's prior testimony at his preliminary hearing. He does not question that this evidence fits within the hearsay exception for former testimony of an unavailable witness. See generally Nowlin v. Commonwealth, 40 Va. App. 327, 335, 579 S.E.2d 367, 371 (2003) (invoking marital testimonial privilege by a witness-spouse, when proper, makes her "unavailable" for hearsay purposes).[3] Instead, he argues that his wife's invocation of the marital testimonial privilege at trial precluded the trial court from admitting into evidence her prior, voluntary testimony at the preliminary hearing.[4] We again disagree.

Code § 19.2-271.2 provides that, except in certain kinds of prosecutions, one spouse cannot be "compelled to be called as a witness against the other" in a criminal case. At no point in this case was Mary Pryor ever compelled to testify against her husband. Though she could have invoked the privilege at the preliminary hearing, see Livingston v. Commonwealth, 21 Va. App. 621, 628, 466 S.E.2d 757, 760 (1996), she voluntarily chose to testify. When the time came for her to testify at trial, she chose not to. In neither instance was she *compelled* — at least in any ordinary sense of the word — to testify against her husband. "Code § 19.2-271.2 affords a defendant on trial no right to object to his spouse's voluntary testimony." Wolfe v.

---

[3] Gary Pryor does not question the voluntariness of his wife's preliminary hearing testimony. Nor does he challenge any other condition ordinarily required for the admission of preliminary hearing testimony of a witness unavailable to testify at trial. See generally Sapp v. Commonwealth, 263 Va. 415, 423, 559 S.E.2d 645, 649 (2002).

[4] Pryor did not argue at trial, nor does he assert on appeal, that his statements to his wife constituted "confidential communications" under Code §§ 8.01-398 and 19.2-271.2. See generally 2005 Va. Acts, ch. 809 (amending § 8.01-398 and incorporating its amended text into the second paragraph of § 19.2-271.2). We thus express no opinion on the subject.

Commonwealth, 37 Va. App. 136, 141, 554 S.E.2d 695, 698 (2001); see also Turner v.

Commonwealth, 33 Va. App. 88, 95, 531 S.E.2d 619, 622 (2000).[5]

Though applicable only to criminal cases, Code § 19.2-271.2 is not "a penal statute that

must be construed strictly against the Commonwealth." Brown v. Commonwealth, 223 Va. 601,

606, 292 S.E.2d 319, 322 (1982). Exactly the opposite is true. Because Code § 19.2-271.2

impairs "the right of the public to have all relevant evidence introduced in the fact-finding

process," its statutory reach "should be strictly construed." Id. (citing Trammel v. United States,

445 U.S. 40, 50 (1980)); see also Bennett v. Commonwealth, 236 Va. 448, 456, 374 S.E.2d 303,

309 (1988) (holding that Code § 19.2-271.2 "must be strictly construed"). The admission of

spousal testimony, therefore, should be the "general rule" and exclusion of that testimony "the

exception." Brown, 223 Va. at 606, 292 S.E.2d at 322; Livingston, 21 Va. App. at 627, 466

S.E.2d at 760 (confirming that Code § 19.2-271.2 should be "strictly construed").

Though the privilege has ancient roots, the "modern justification for this privilege against

adverse spousal testimony is its perceived role in fostering the harmony and sanctity of the

marriage relationship." Trammel, 445 U.S. at 44. And when "one spouse has testified in a

criminal prosecution against the other, whatever marital harmony once existed has been

dissipated, and the spousal privilege no longer serves a useful purpose." Brown, 223 Va. at 608,

292 S.E.2d at 323. After Mary Pryor accused her husband of premeditated murder in open court,

any marital harmony they may have previously enjoyed was effectively overtaken by events.

Applying the privilege under such circumstances cannot be justified either by the text of the

statute or the underlying public policy supporting it.

---

[5] Given our holding, we need not address whether Mary Pryor's waiver of the marital privilege constituted a subject-matter waiver, releasing for all time the topics she discussed from the protection of the privilege. Cf. Blackman v. Commonwealth, 45 Va. App. 633, 641, 613 S.E.2d 460, 464-65 (2005) (applying principle to privilege against self-incrimination).

- 7 -

For these reasons, we hold the trial court did not err in admitting into evidence the preliminary hearing testimony of Mary Pryor.[6]

III.

Finding no error in either conviction, we affirm the trial court's final order confirming the jury's verdict holding Gary Pryor guilty of first-degree murder and abduction.

Affirmed.

---

[6] Gary Pryor also challenges the manner in which the preliminary hearing testimony was read to the jury, which he characterizes as an impermissible "reenactment." Under Virginia law, however, the "manner of the introduction of evidence" involves a core aspect of the trial court's discretion, "'and in the absence of abuse of this discretion resulting in prejudice to [the] defendant's case,' the court's ruling will not be reversed on appeal." Cheng v. Commonwealth, 240 Va. 26, 40, 393 S.E.2d 599, 606 (1990) (quoting Virginian Ry. v. London, 148 Va. 699, 716, 139 S.E. 328, 333 (1927)). Nothing in this record suggests the trial court abused its discretion on this subject or that Pryor suffered any prejudice in any event.

Benton, J., concurring, in part, and dissenting, in part.

I concur in the holding that the trial judge did not err in overruling Gary Anthony Pryor's objection to the admission of his wife's preliminary hearing testimony. I also agree that the trial judge did not abuse his discretion in permitting the prosecutor and a witness to reenact the wife's testimony by question and answer at trial. I dissent, however, from the portion of the opinion upholding the abduction conviction.

## I. Spousal Testimony

Without any objection by Pryor or his wife, Pryor's wife testified for the Commonwealth at the preliminary hearing that Pryor strangled Lisa Johnson. Only during cross-examination by Pryor's attorney was she asked to explain the sequence of events. She then testified for the first time that Pryor asked her to retrieve tape, he taped Johnson's wrists, and he rose to obtain a plastic bag to suffocate Johnson. During this cross-examination, Pryor's wife testified about statements Pryor made to her as these events were occurring.

Citing Code § 19.2-271.2, Pryor's attorney contends on appeal that the trial judge erred in admitting the wife's preliminary hearing testimony because "the wife exercised her right . . . to not testify against the husband." In essence, he argues that Pryor's wife invoked her testimonial privilege not to be compelled to testify against her husband. Pryor's attorney did not argue at trial and does not argue on appeal that her testimony should have been barred by the interspousal confidential communication privilege recognized in Code § 19.2-271.2, which incorporated Code § 8.01-398. Interspousal confidential communication privilege is a separate, distinct privilege created by the statute. See Church v. Commonwealth, 230 Va. 208, 213-15, 335 S.E.2d 823, 826-27 (1985). For this reason, I concur in the ruling that the trial judge did not err in overruling the objection that was articulated by Pryor's attorney at trial.

II. Abduction

Pryor argues on appeal that his detention of Johnson was not separate and apart from the detention employed in the act causing the homicide. I disagree with the majority's conclusion that the holding in Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985), cannot apply when a defendant is charged with abduction coupled with a homicide.

Pryor's wife's testimony did not establish that the time sequence of these events was lengthy or that Pryor moved any significant distance beyond Johnson's body in obtaining the bag. The absence of those facts is critical because in Brown the Supreme Court

> h[e]ld . . . that one accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

230 Va. at 314, 337 S.E.2d at 713-14. The Supreme Court further noted that "other courts follow a similar rule," and it cited Iowa v. Folck, 325 N.W.2d 368 (Iowa 1982), as an example. Brown, 230 Va. at 314, 337 S.E.2d at 714. Significantly, the Iowa Supreme Court noted in Folck that, when a defendant commits a criminal act, "not every incidental confinement or every trivial movement from one place to another warrants a kidnapping conviction," and it enumerated factors to be used in determining whether a separate abduction occurred. Folck, 325 N.W.2d at 371.

In a recent decision, we analyzed a series of Virginia cases that applied the Brown holding and concluded that there are four "factors Virginia courts have employed on a case-by-case basis in determining whether an abduction is incidental to another crime." Hoyt v. Commonwealth, 44 Va. App. 489, 495, 605 S.E.2d 755, 757-78 (2004). Those factors, stated in summary fashion, are:

- 10 -

> "(1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense."

Id. at 494, 605 S.E.2d at 757 (quoting Government of Virgin Islands v. Berry, 604 F.2d 221, 227 (3d Cir. 1979)). These factors are not far removed from those cited in Folck, the case our Supreme Court referenced as applying a rule similar to that adopted in the Brown holding.

Applied to this case, the Brown holding and our distillation of the four factors lead to the conclusion that Pryor's detention of Jackson was merely incidental to the restraint employed by Pryor in the commission of the homicide.

First, the duration of Pryor's detention of Johnson and of the other events connected to the detention were not shown to be significant. The evidence proved that Pryor and Johnson argued about money Johnson owed the Pryors for drugs she consumed. Johnson said to Pryor, "You can kill me if you want I'm not going to pay you." During the argument, Pryor fell upon Johnson when she tripped at "the corner of the bar . . . the counter." There, he tied her and then retrieved a bag from the cabinet and "smothered" her. No evidence proved Pryor moved Johnson or that he moved any significant distance in obtaining the bag to suffocate her. No evidence proved that any lengthy period of time occurred between the tying and the asphyxiation. Indeed, the evidence suggests that Pryor smothered Johnson immediately after tying her. In addition, testimony by the assistant medical examiner proved that the "very high level" of the controlled substance Fentanyl in Johnson's system would have caused her to have "serious problems" breathing even without any contact with Pryor.

Second, the detention occurred during the argument and struggle that culminated in the homicide. No evidence established that the detention was an act that occurred separately from

the act of the homicide.  Both the detention and the homicide flowed from the argument in a continuous sequence.

Third, the detention was the mode of action that facilitated the homicide.  It was inherently a part of the method of the homicide that was committed.  The tying of Johnson was done incidental to and in furtherance of Pryor suffocating Johnson.  See Johnson v. Commonwealth, 221 Va. 872, 879, 275 S.E.2d 592, 596-97 (1981) (reversing an abduction conviction because the evidence proved that a defendant who held a woman while committing an assault and battery committed this act in furtherance of sexual advances and the detention was merely incidental to that offense).  Here, Pryor could not have suffocated Johnson without detaining her, and he only moved a trivial distance in obtaining the bag.

Fourth, the detention did not create a significant danger to Johnson that was independent of the danger posed by the homicide.  In Hoyt, this Court held that a detention lasting five minutes and moving the victim ten feet was slight and, thus, the defendant could not be convicted of abduction as well as the underlying felony.  44 Va. App. at 493, 605 S.E.2d at 757.  In this case, the continuity of the acts and the absence of evidence that a significant lapse of time occurred between the acts negate the notion that the detention posed a significant, independent danger to Johnson.

As the Supreme Court's holding in Brown suggests, the dispositive issue is whether the detention was "merely incidental to . . . the restraint employed in the commission of the other crime."  230 Va. at 314, 337 S.E.2d at 714.  In Hoyt, we observed that

> the Supreme Court of Maryland . . . noted that "a majority of courts . . . now hold that 'kidnapping statutes do not apply to unlawful confinements or movements incidental to the commission of other felonies'" [and the Maryland court] recognized that a literal reading of abduction and kidnapping statutes would "overrun other crimes, such as robbery, rape, and assault."

- 12 -

44 Va. App. at 493, 605 S.E.2d at 757 (quoting State v. Stouffer, 721 A.2d 207, 212 (Md. 1998) (quoting Frank J. Wozniak, Annotation, Seizure or Detention for Purpose of Committing Rape, Robbery, or Other Offense as Constituting Separate Crime of Kidnapping, 39 A.L.R.5th 283, 356 (1996))).  This view is consistent with the holding in Brown.

Relying on footnote 11 in Powell v. Commonwealth, 261 Va. 512, 541 n.11, 552 S.E.2d 344, 360 n.11 (2001), the majority opinion asserts that the Supreme Court of Virginia has summarily dismissed the contention that the Brown principle applies to an abduction coupled with a homicide.  This footnote, however, is merely dicta because the abduction charge in Powell did not arise in connection with a homicide, and this footnote has never been relied upon by the Supreme Court or any other court.  Indeed, as the following passage demonstrates, the abduction in Powell was not incidental to the restraint employed in any other offense:

> Here, there is sufficient evidence to support the finding of the jury that Powell used greater restraint than was necessary to commit rape.  First, Powell ordered Kristie to go to a more secluded part of the home prior to the rape.  Although Powell did not display a weapon to her at that time, it is clear under the circumstances that Kristie was in reasonable fear for her life having just discovered her sister's lifeless body and being aware that Powell was usually armed.  Moreover, *after the rape was completed, Powell bound Kristie and left her for some time before returning to attempt to kill her*.  This restraint clearly exceeded that necessary to accomplish the rape.  Accordingly, we hold that the trial court did not err in failing to strike the evidence as to the charge of abduction.

Id. at 541, 522 S.E.2d at 360 (emphasis added) (citations and footnote omitted).

I also disagree with the majority opinion's conclusion that the Supreme Court held in Jerman v. Dir., Dept. of Corrections, 267 Va. 432, 593 S.E.2d 266 (2004), that abductions that immediately preceded and followed a homicide "cannot, as a matter of law, be 'inherent in the act of murdering.'"  In Jerman, the Supreme Court noted that two separate detentions occurred apart from any that may have occurred during the assault that led to Rhatigan's later death in a hospital.

- 13 -

> The first abduction was accomplished through asportation by deception, which is proscribed by Code § 18.2-47. Panko picked Rhatigan up and drove him to her house on the pretext that some of her friends were there and they "all wanted to trip." She did not disclose to Rhatigan the fact that Jerman, Bohn, and Joe were awaiting him with baseball bats. . . .
>
> The second abduction occurred [after the assault] when Bohn and Joe carried Rhatigan's body out of the house, through the backyard to the fence, and then tossed him over the fence.

267 Va. at 439-40, 593 S.E.2d at 259. In view of these facts, the Supreme Court held that "the evidence in this case proved abduction by deception before the assault and abduction by force after the assault. Neither involved the restraint or force inherent in the act of murdering Rhatigan." Id. at 440, 593 S.E.2d at 260.

Simply put, the evidence in this case proved Pryor's detention of Johnson was incidental to the act of suffocating Johnson. In other words, the detention was not "remote in terms of time and distance" from the homicide and was not, "in terms of quality and quantity, . . . separate and apart" from the restraint employed in the suffocation of Johnson. Brown, 230 Va. at 314, 337 S.E.2d at 714. For these reasons, I would reverse the abduction conviction.