KELSEY, Judge.
A jury found Gary Pryor guilty of first-degree murder and abduction. On appeal, he claims his abduction conviction should be vacated because his physical restraint of the victim served only as a prelude to her murder. Pryor also contends both convictions should be overturned because the trial court violated Code § 19.2-271.2 by admitting into evidence the testimony of Pryor’s wife previously given at his preliminary hearing. Finding no merit in either assertion, we affirm both convictions.
*4 I.
Under settled principles, we review the evidence in the “light most favorable” to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). That principle requires us to “discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.” Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).
On the day of her murder, Lisa Johnson was visiting the mobile home of Gary and Mary Pryor. While there, Johnson and the Pryors used illegal drugs. When Johnson tried to leave without paying for the drugs, Gary Pryor fought with Johnson. After Johnson fell to the ground, Gary Pryor “went down on top of her and held her.” While detaining Johnson in this way, Gary Pryor instructed his wife to “get him the tape to tape her.” Mary Pryor complied, and Gary Pryor taped Johnson so she could not escape. Gary Pryor then left Johnson momentarily to retrieve a plastic bag. He returned to Johnson and used the bag to smother her to death.
Gary and Mary Pryor later dumped Johnson’s body over the side of North Mountain near Buffalo Gap. A witness saw the Pryors and their vehicle shortly after they discarded Johnson’s body. The witness also found Johnson’s still-warm body and summoned the police. Upon a search of the Pryors’ mobile home, the police found Johnson’s personal identification, jewelry, and underwear in a plastic bag. The police also found traces of Johnson’s blood as well as pieces of tape used to restrain Johnson prior to her death. Later forensic testing identified Johnson’s hair fibers on the tape. After apprehending the Pryors in Michigan, the police found a bed sheet stained with Johnson’s blood a few miles from where her body had been dumped.
At Gary Pryor’s preliminary hearing, Mary Pryor elected to testify against her husband. Proclaiming “I’m sorry, Gary. I have to tell the truth,” she asserted no testimonial or eviden *5 tiary privilege of any kind. She gave sworn testimony describing in detail both the murder and the effort to hide Johnson’s body. Most of the specifics of the murder came out during cross-examination by Gary Pryor’s counsel.
At the later jury trial, the Commonwealth called Mary Pryor as a witness. She refused to take the stand, invoking the marital testimonial privilege of Code § 19.2-271.2. At the Commonwealth’s request, the trial court declared Mary Pryor unavailable as a witness and allowed her prior testimony to be read to the jury. In response, Gary Pryor testified that his wife accidentally suffocated Johnson to death during a scuffle between the two. After testifying, Gary Pryor rested his case. The jury found him guilty of first-degree murder and abduction.
II.
A. Murder & The Brown Abduction Doctrine
Relying on Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985), Pryor contends his abduction conviction must be reversed as a matter of law. Even accepting the Commonwealth’s evidence at face value, Pryor argues, his physical restraint of Johnson before her suffocation was simply a brief prelude to the murder—a merely “incidental” detention that cannot be separately criminalized as an abduction. We disagree.
In Brown, the defendant argued that double jeopardy principles forbid the coupling of an abduction conviction with related rape and forcible sodomy convictions when the conduct arose “out of the same criminal episode.” Id. at 311-12, 337 S.E.2d at 712. Brown resolved the “constitutional problem” by holding that the General Assembly authorized a separate punishment for abduction so long as it did not involve the “kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault.” Id. at 313-14, 337 S.E.2d at 713 (emphasis added). Applying that principle to the facts, Brawn found that “the record before us shows that the detention underlying the abduction conviction was not the kind *6 of restraint that is inherent in the act of rape.” Id. at 314, 337 S.E.2d at 714 (emphasis added). Because the “acts of force and intimidation employed in the abduction were separate and apart from the restraint inherent in the commission of the rape,” id. (emphasis added), the multiple-punishment challenge failed.
We recently confirmed our understanding of Brown in just these terms. “Under this principle, a defendant ‘charged with abduction by detention and another crime that factually includes restraint of the victim (e.g., rape or robbery)’ as a matter of law cannot ‘be convicted of both unless the abduction-detention is factually distinct from the restraint inherent in the other crime.’ ” Walker v. Commonwealth, 47 Va.App. 114, 123, 622 S.E.2d 282, 286-87 (2005) (quoting Roger D. Groot, Criminal Offenses & Defenses in Virginia at 3 (5th ed.2005) (emphasis omitted)). In this way, Brown focuses not on whether the restraint was merely useful to perpetrating a detention-plus crime—but whether the restraint was “intrinsic” to, Cardwell v. Commonwealth, 248 Va. 501, 511, 450 S.E.2d 146, 152 (1994), or “inherent” in, Bell v. Commonwealth, 22 Va.App. 93, 97, 468 S.E.2d 114, 116 (1996); Coram v. Commonwealth, 3 Va.App. 623, 625-26, 352 S.E.2d 532, 533 (1987), the detention-plus crime.
No Virginia case has ever held that the Brown multiple-punishments principle applies to abduction coupled with homicide. The first time such an assertion was ever made, the Virginia Supreme Court summarily dismissed it with the observation that restraint “is not a necessary element of homicide. Thus, [defendant’s] contention that the restraint of [victim] was not more than what was necessary incident to his attempt to kill her is without merit.” Powell v. Commonwealth, 261 Va. 512, 541 n. 11, 552 S.E.2d 344, 360 n. 11 (2001). This makes a great deal of sense, given that an abduction preceding a murder can never be said to be legally “inherent in the act” of murder. See Brown, 230 Va. at 314, 337 S.E.2d at 714; see also Jerman v. Dir., Dept. of Corr., 267 Va. 432, 440, 593 S.E.2d 255, 260 (2004) (dismissing habeas complaint *7 on the ground that abductions immediately preceding and following a murder cannot, as a matter of law, be “inherent in the act of murdering”).[1]
Maybe not, Pryor argues, but as a practical matter some murders do involve a form of simultaneous physical restraint. A murder victim stabbed multiple times would likely find, during the time between each penetration of the blade, her freedom of movement restrained as a result. Similarly here, Pryor continues, Johnson did not die at the very moment he placed the plastic bag over her mouth and nose. The process of asphyxiation took some measurable period of time to shut down her internal organs sufficient to cause her death. This period of restraint cannot be separately criminalized under the abduction statute, Pryor concludes.
We need not address this argument since it posits a wholly hypothetical situation. In this case, Pryor physically held Johnson down on the ground while his wife obtained the requested tape. When she returned with the tape, Pryor taped Johnson so she could not escape while he went to retrieve a plastic bag to smother her with. An abduction occurred before Pryor sealed off Johnson’s airways with the plastic bag and began the process of suffocating her to death. Had he relented at the last moment and decided against murdering Johnson, Pryor could have been convicted of an abduction based upon what he had already done. An abduction conviction “requires only a showing of ‘physical detention of a person, with the intent to deprive him of his personal liberty, by force, intimidation, or deception’ without more.” Walker, 47 Va.App. at 120, 622 S.E.2d at 285 (citation omitted).
*8 Based on the logic of Brown and the holding of Powell, we conclude that an abduction preceding a murder may lead to separate convictions for each. The trial court in Pryor’s case, therefore, did not err in refusing to set aside the abduction conviction.[2]
B. Marital Testimonial Privilege
Pryor also argues that the trial court erroneously admitted into evidence his wife’s prior testimony at his preliminary hearing. He does not question that this evidence fits within the hearsay exception for former testimony of an unavailable witness. See generally Nowlin v. Commonwealth, 40 Va.App. 327, 335, 579 S.E.2d 367, 371 (2003) (invoicing marital testimonial privilege by a witness-spouse, when proper, makes her “unavailable” for hearsay purposes).[3] Instead, he argues that his wife’s invocation of the marital testimonial privilege at trial precluded the trial court from admitting into evidence her prior, voluntary testimony at the preliminary hearing.[4] We again disagree.
Code § 19.2-271.2 provides that, except in certain kinds of prosecutions, one spouse cannot be “compelled to be called as a witness against the other” in a criminal case. At no point in this case was Mary Pryor ever compelled to testify against her husband. Though she could have invoked the *9 privilege at the preliminary hearing, see Livingston v. Commonwealth, 21 Va.App. 621, 628, 466 S.E.2d 757, 760 (1996), she voluntarily chose to testify. When the time came for her to testify at trial, she chose not to. In neither instance was she compelled—at least in any ordinary sense of the word—to testify against her husband. “Code § 19.2-271.2 affords a defendant on trial no right to object to his spouse’s voluntary testimony.” Wolfe v. Commonwealth, 37 Va.App. 136, 141, 554 S.E.2d 695, 698 (2001); see also Turner v. Commonwealth, 33 Va.App. 88, 95, 531 S.E.2d 619, 622 (2000).[5]
Though applicable only to criminal cases, Code § 19.2-271.2 is not “a penal statute that must be construed strictly against the Commonwealth.” Brown v. Commonwealth, 223 Va. 601, 606, 292 S.E.2d 319, 322 (1982). Exactly the opposite is true. Because Code § 19.2-271.2 impairs “the right of the public to have all relevant evidence introduced in the fact-finding process,” its statutory reach “should be strictly construed.” Id. (citing Trammel v. United States, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980)); see also Bennett v. Commonwealth, 236 Va. 448, 456, 374 S.E.2d 303, 309 (1988) (holding that Code § 19.2-271.2 “must be strictly construed”). The admission of spousal testimony, therefore, should be the “general rule” and exclusion of that testimony “the exception.” Brown, 223 Va. at 606, 292 S.E.2d at 322; Livingston, 21 Va.App. at 627, 466 S.E.2d at 760 (confirming that Code § 19.2-271.2 should be “strictly construed”).
Though the privilege has ancient roots, the “modern justification for this privilege against adverse spousal testimony is its perceived role in fostering the harmony and sanctity of the marriage relationship.” Trammel, 445 U.S. at 44, 100 S.Ct. at 909. And when “one spouse has testified in a criminal *10 prosecution against the other, whatever marital harmony once existed has been dissipated, and the spousal privilege no longer serves a useful purpose.” Brown, 223 Va. at 608, 292 S.E.2d at 323. After Mary Pryor accused her husband of premeditated murder in open court, any marital harmony they may have previously enjoyed was effectively overtaken by events. Applying the privilege under such circumstances cannot be justified either by the text of the statute or the underlying public policy supporting it.
For these reasons, we hold the trial court did not err in admitting into evidence the preliminary hearing testimony of Mary Pryor.[6]
III.
Finding no error in either conviction, we affirm the trial court’s final order confirming the jury’s verdict holding Gary Pryor guilty of first-degree murder and abduction.

Affirmed.

. To be sure, even when abduction serves as a predicate offense for felony murder, double jeopardy principles do not preclude separate convictions (and thus multiple punishments) for both murder and abduction. See Spain v. Commonwealth, 7 Va.App. 385, 392, 373 S.E.2d 728, 731-32 (1988) (relying on Fitzgerald v. Commonwealth, 223 Va. 615, 637, 292 S.E.2d 798, 811 (1982)).

. For these reasons, we see no need to analyze the detention dissimilarity factors outlined in Hoyt v. Commonwealth, 44 Va.App. 489, 605 S.E.2d 755 (2004). Hoyt did not apply Brown to an abduction preceding a murder or discuss any legal precedents that did.

. Gary Pryor does not question the voluntariness of his wife's preliminary hearing testimony. Nor does he challenge any other condition ordinarily required for the admission of preliminary hearing testimony of a witness unavailable to testify at trial. See generally Sapp v. Commonwealth, 263 Va. 415, 423, 559 S.E.2d 645, 649 (2002).

. Pryor did not argue at trial, nor does he assert on appeal, that his statements to his wife constituted “confidential communications” under Code §§ 8.01-398 and 19.2-271.2. See generally 2005 Va. Acts, ch. 809 (amending § 8.01-398 and incorporating its amended text into the second paragraph of § 19.2-271.2). We thus express no opinion on the subject.

. Given our holding, we need not address whether Mary Pryor's waiver of the marital privilege constituted a subject-matter waiver, releasing for all time the topics she discussed from the protection of the privilege. Cf. Blackman v. Commonwealth, 45 Va.App. 633, 641, 613 S.E.2d 460, 464-65 (2005) (applying principle to privilege against self-incrimination).

. Gary Pryor also challenges the manner in which the preliminary hearing testimony was read to the jury, which he characterizes as an impermissible "reenactment.” Under Virginia law, however, the "manner of the introduction of evidence” involves a core aspect of the trial court’s discretion, " 'and in the absence of abuse of this discretion resulting in prejudice to [the] defendant’s case,' the court’s ruling will not be reversed on appeal.” Cheng v. Commonwealth, 240 Va. 26, 40, 393 S.E.2d 599, 606 (1990) (quoting Virginian Ry. v. London, 148 Va. 699, 716, 139 S.E. 328, 333 (1927)). Nothing in this record suggests the trial court abused its discretion on this subject or that Pryor suffered any prejudice in any event.