COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


ROBERT DARNELL COOPER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1154-09-1                     JUDGE SAM W. COLEMAN III
                                                        OCTOBER 19, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Aundria D. Foster, Judge

        William Roots, Jr., for appellant.

        Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
        Cuccinelli, II, Attorney General, on brief), for appellee.


        Robert Darnell Cooper (appellant) appeals his convictions for first-degree murder and use of

a firearm in the commission of a felony.  On appeal, he contends the evidence was insufficient to

prove he acted in concert with several other shooters.  He also argues the trial court erred by

refusing to give his proposed jury instruction defining concert of action.  We affirm the decision of

the trial court.

                                        Background

        On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

Pryor v. Commonwealth, 48 Va. App. 1, 4, 628 S.E.2d 47, 48 (2006) (quoting Commonwealth v.

Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)).  "That principle requires us to 'discard

the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

therefrom.'" Id. (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

On the evening of June 16, 2007, Clifton Davis, Sr. and his wife gave a high school graduation party for their son at the Anchor Lodge in Newport News. Davis, Sr. testified that at the entrance he patted down for weapons "every male" who attended the party. Appellant, who was accompanied by three male companions, attended the party. Also attending the party were James Hemerlein and Ryan Richards. Just before the party ended, appellant was seen arguing with Hemerlein. Clifton Davis, Jr. testified that he approached appellant and Hemerlein after he heard they were about to have a fight. He spoke with appellant, who indicated that he did not intend to fight, but rather, he "was going to leave it" and he was "going to chill out." Davis, Jr. testified that both appellant and Hemerlein looked "mad," "tense," and "ready to fight."

When the party ended, appellant and his three friends were the first to exit the building. Appellant was wearing a white tank-style undershirt, and his friends were wearing white t-shirts. Larry Caine, an off-duty sheriff's deputy, was outside the building monitoring the crowd as it dispersed. Caine heard "a pop" that sounded like a gunshot. He turned toward the sound and saw appellant standing between two young men in an adjacent field. Caine testified appellant's right arm was "coming forward" and he saw "muzzle flashes." Caine then realized appellant possessed a weapon. Caine also saw appellant's friends who had exited the building with him firing guns toward a crowd of people. Caine estimated twenty shots were fired. About one hour after the shooting, Caine positively identified appellant as the gunman wearing the white tank-style undershirt.

Martel Harris, a guest at the party, also identified appellant as one of the persons shooting into the crowd. Harris saw appellant speak to Hemerlein outside the building and then saw appellant shooting toward Hemerlein. Harris testified appellant's three companions also fired

weapons, but appellant was the first to begin shooting. Harris estimated thirty shots were fired. The victim, Richards, who was standing near Hemerlein, was struck by a bullet and later died from the wound.

The bullet that killed Richards was not recovered. However, the medical examiner testified the wound was most consistent with having been caused by a medium caliber bullet, which includes a 9 mm, as opposed to a larger caliber such as a .45 caliber bullet. Ballistics evidence confirmed that at least fourteen shots were fired from four to possibly six weapons, including one 9 mm weapon and two .45 caliber weapons.

Detective Flythe arrested appellant the day after the shooting. Appellant was wearing a white tank-style undershirt. When Flythe questioned appellant, he denied that he had fired a gun outside the Anchor Lodge. He told Flythe he did not have a gun at the party, but said, "If I needed it, I could get [a 9 mm gun]." Appellant admitted to Flythe that he was "hyped" after the party and was getting ready to fight Hemerlein.

At trial, the Commonwealth was relying upon, as one of its theories that appellant was guilty of murder, the fact that even if appellant did not fire the fatal shot he acted in concert with his three cohorts, one of whom did shoot Richards. Thus, appellant requested that the trial court give the jury instruction which he offered to define concert of action. Appellant's counsel read into the record the proposed instruction taken *verbatim* from Rollston v. Commonwealth, 11 Va. App. 535, 542, 399 S.E.2d 823, 827 (1991). The court denied appellant's request but gave instead the concert of action instruction proffered by the Commonwealth taken from the Virginia Model Jury Instructions.

The jury found appellant guilty of first-degree murder and use of a firearm in the commission of a felony. Appellant appeals the convictions to this Court.

<u>Analysis</u>

Appellant argues the evidence offered by the Commonwealth did not prove he shot the victim or that he and the other persons who fired weapons on the night of the incident acted in concert or "had a plan to do so." He asserts the Commonwealth had to prove the gunmen "had a plan" in order to prevail on a theory of concert of action.

"[T]he Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." <u>Bolden v. Commonwealth</u>, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008).

First, the ballistics evidence showed that one 9 mm gun and several .45 caliber guns were fired during the incident. From the medical evidence that the victim was killed by a medium caliber bullet, such as a 9 mm bullet and not a .45 caliber bullet, together with several witnesses having testified that appellant was firing a pistol and firing it in the direction of Hemerlein, and appellant's admission that he had access to a 9 mm gun that night, the jury could have concluded that appellant acted as a principal in the first degree and that he was the person whose shot struck and killed Richards. Thus, the evidence was sufficient to support the murder conviction without our having to consider the sufficiency of the evidence to prove his guilt under the theories of concert of action or principal in the second degree. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." <u>Sandoval v. Commonwealth</u>, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Nevertheless, as to whether the evidence is sufficient to prove appellant criminally liable under a concert of action legal theory does not require proof of the formation of a "plan." While conspiracy requires an express or implied agreement, concert of action liability requires only that an informal "element of agreement in the decision by one person to become an aider and abettor

to another" exist. John L. Costello, <u>Virginia Criminal Law & Procedure</u> § 17.2-4, at 223 (3d ed. 2002).

> "All those who assemble themselves together with an intent to commit a wrongful act, the execution whereof makes probable, in the nature of things, a crime not specifically designed, but incidental to that which was the object of the confederacy, are responsible for such incidental crime.  * * *  Hence, it is not necessary that the crime should be a part of the original design; it is enough if it be one of the incidental probable consequences of the execution of that design, and should appear at the moment to one of the participants to be expedient for the common purpose."

<u>Carter v. Commonwealth</u>, 232 Va. 122, 126-27, 348 S.E.2d 265, 268 (1986) (quoting <u>Brown v. Commonwealth</u>, 130 Va. 733, 738, 107 S.E. 809, 811 (1921)).

The evidence showed that appellant and his companions attended the party together and each brought guns with them. Appellant told a detective that he did not have a weapon "at" the party, but said he had access to a 9 mm weapon. At the end of the party, and after appellant had a disagreement with Hemerlein, appellant and his friends exited the party together before the other guests left. A witness saw appellant speak to Hemerlein, then fire a gun toward him and the crowd of people. At that time appellant's friends also were seen firing weapons, and the victim was killed either by appellant or one of his friends who engaged in the shooting.

From the evidence, the jury could have inferred that appellant and his friends armed themselves and when appellant began firing they too fired their weapons toward Hemerlein and other guests. The jury could have concluded that the death of the victim, a bystander, was an incidental probable consequence of the young men intentionally shooting at Hemerlein or into the crowd. Accordingly, the jury could have found from the evidence that appellant acted in concert with his cohorts. We only ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). "This

familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Finally, in addition to the concert of action jury instruction, the trial court instructed the jury on the legal theory of being a principal in the second degree. Jury Instruction Number 7 stated:

> A principal in the first degree is the person who actually commits the crime. A principal in the second degree is a person who is present, aiding and abetting, by helping in some way in the commission of the crime. Presence and consent alone are not sufficient to constitute aiding and abetting. It must be shown that the defendant intended his words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it.
>
> A principal in the second degree is liable for the same punishment as the person who actually committed the crime.

Ample evidence exists from which the jury reasonably could have concluded that appellant, at a minimum, acted as a principal in the second degree. Although the evidence did not show with certainty which of the gunmen fired the fatal bullet, the evidence showed that several persons, including appellant, fired guns toward a crowd of people. The victim died as a result of this gunfire. Thus, appellant aided and abetted the other shooters by joining in the gunfire, and, by so doing, acted at least as a principal in the second degree to the murder of Richards. See Riddick v. Commonwealth, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983) (holding that where both defendant and his cohort fired shots, "even if [defendant's cohort] killed the victim, defendant was criminally responsible for the acts of the gunman . . . as a principal in the second degree"). Accordingly, the jury could have found appellant guilty of murder as a principal in the second degree.

<u>Refusal of Concert of Action Jury Instruction</u>

Appellant contends the trial court erred by refusing to give his proposed jury instruction defining concert of action. The trial court has broad discretion over whether to give or deny proposed jury instructions. <u>See</u> <u>Gaines v. Commonwealth</u>, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*).

The Commonwealth proffered a concert of action jury instruction taken from the Virginia Model Jury Instructions.[1] Appellant also requested a concert of action jury instruction. Appellant's counsel acknowledged that he had no written concert of action instruction, but asked "If [he] could read into the record what definition [he] was relying on." Appellant's counsel then read from <u>Rollston</u>, 11 Va. App. at 542, 399 S.E.2d at 827 (quoting <u>Black's Law Dictionary</u> 262 (5th ed. 1979)): "'Concerted action is defined as action that has been planned, arranged, adjusted, agreed on and settled between parties acting together pursuant to some design or scheme.'" The trial court ruled it would only give the Commonwealth's instruction based on the model jury instruction because it was "not comfortable that the definitions that counsel has cited are appropriate."

While the record does not include a written jury instruction proffered by appellant defining concert of action, the Commonwealth conceded at oral argument that counsel's reading the language *verbatim* from the <u>Rollston</u> opinion into the record was a sufficient proffer. Thus, for purposes of this opinion we accept the Commonwealth's concession.

---

[1] The instruction given provided:

> If there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every person connected with the consummation of such resulting crime.

We hold, however, that the trial court did not abuse its discretion by refusing to give appellant's proposed instruction. See Shaikh v. Johnson, 276 Va. 537, 546-47, 666 S.E.2d 325, 329 (2008) (involving appeal from order dismissing petition for writ of *habeas corpus* and addressing jury instruction issue in context of ineffective assistance of counsel claim). In Shaikh, two defendants were charged with murder as a result of a joint attack they inflicted upon a victim. At Shaikh's trial, defense counsel agreed that the model jury instruction for concert of action was accurate, but he argued it was incomplete because it did not define concert of action. Id. at 542, 666 S.E.2d at 327. Defense counsel orally proffered an instruction containing the following language: "'Concert of action is an action that's been planned, arranged, adjusted, agreed on or settled between the parties acting together, *et cetera*.'" Id. Thus, the proffered instruction in Shaikh was strikingly similar to the language from Rollston as quoted by appellant's counsel in argument before the trial court.

In Shaikh, the trial court refused to give the proffered instruction "observing that the appellate courts had frequently 'cautioned against pulling language out of particular cases' in framing jury instructions." Id. The Supreme Court found the trial court's use of the model jury instruction addressed all the important issues in the case. Id. at 546, 666 S.E.2d at 329. The Court also found the proffered instruction

> would have been more confusing than enlightening. The terms "planned, arranged, adjusted, agreed on or settled" are stated in the disjunctive, so as to give the jury the apparent choice of any single one of them as the definition of "concert of action." In that context, "adjusted" and "settled" are themselves in need of definition.

Id.

The Court noted:

> We have frequently cautioned against "the danger of the indiscriminate use of language from appellate opinions in a jury instruction." Appellate language used to explain a ruling or

illustrate a point must necessarily be tailored to the facts and circumstances of the case then before the court on appeal. Unless clearly intended for use as a jury instruction, such language is inappropriate for that purpose.

Id.

"The burden is on the proponent of a jury instruction to satisfy the trial court that the proposed language is a correct statement of the law, applicable to the facts of the case on trial, and expressed in appropriate language." Id. Accepting the oral proffer made by appellant's counsel as sufficient, appellant did not meet that burden. Moreover, the trial court gave an instruction on concert of action that adequately stated the law and addressed the issues raised in the case related to that legal principle. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). We hold the trial court did not abuse its discretion in its ruling.

Accordingly, we affirm appellant's convictions.

Affirmed.