COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Kelsey and Alston
Argued at Chesapeake, Virginia


CLARENCE EDWARD GRAY, III

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2305-12-1                      JUDGE ROBERT P. FRANK
                                                    MARCH 11, 2014
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                            Marc Jacobson, Judge Designate

                James O. Broccoletti (Zoby, Broccoletti & Normile, P.C., on brief),
                for appellant.

                Robert H. Anderson, III, Senior Assistant Attorney General (Kenneth
                T. Cuccinelli, II, Attorney General, on brief), for appellee.


        Clarence Edward Gray, III, appellant, was convicted of attempted abduction in violation

of Code §§ 18.2-26 and 18.2-47, and assault and battery, in violation of Code § 18.2-57.[1]  On

appeal, he contends the trial court erred in finding he had an intent to deprive the victim of her

personal liberty.  He also maintains any attempted abduction was only incidental to the assault

and battery offense.[2]  For the reasons stated, we affirm.

                                        BACKGROUND

        Victim, a twenty-five-year-old woman, was in the check-out line of a market on

December 17, 2011.  She had just moved into her Portsmouth home two to three weeks earlier.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The assault and battery conviction is not before this Court.

        [2] At oral argument, appellant conceded that the assault and battery was concluded before
any behavior giving rise to the attempted abduction.  Because he abandons the assignment of
error regarding the incidental detention doctrine, we need not address it on appeal.

Appellant entered the store and walked directly to the counter where victim stood. When a store clerk asked appellant what he was doing, he replied that he "was just looking for a pretty young thing such as [victim]." Appellant "got right behind" victim and asked victim if he could pay for her groceries. Appellant also made a comment as victim was leaving the market, and she told him, "You don't even know how old I am." When appellant asked her age, victim replied that she was twenty-five years old.

Victim began to walk home between 3:00 p.m. and 4:00 p.m., when it was still light outside. As she was walking, appellant "was right behind [her]. [She] didn't even know that he was right behind [her] until he caught up with [victim] pretty quickly." Appellant yelled out to get her attention, and she turned. Victim waited for appellant to "catch up" with her, to see what he was going to say. Victim turned and walked away. Appellant then offered to give her a ride home, but she informed him that she lived nearby and a ride was unnecessary. As victim continued to walk, appellant blocked her path, walking backwards in front of her. Appellant again offered victim a ride home, and victim attempted to walk around appellant.

Appellant then grabbed victim's left jacket sleeve. "It was like he was pulling me back in the opposite direction and I yanked away, and that's when I panicked." Victim then turned around and telephoned her sister-in-law. Then, appellant released victim. Despite telling appellant she would call her family if he did not leave her alone, appellant again offered victim a ride home.

Then, as victim was "proceeding to cross the street to get to the other block of the street" a block from where she lived, victim heard appellant's tires "screeching." Appellant's big truck "had blocked me off that way, so that I could not cross the street." She testified that the "truck was so big, I really couldn't walk around it." Appellant rolled his window down and again asked victim if she wanted a ride home. Victim again refused.

Victim testified that she was not able to walk away freely. While she stated that nothing prevented her from walking around the vehicle, she explained why she did not do so. If victim had walked in the opposite direction or behind the truck, she was concerned that appellant might put the vehicle in reverse and hit her, something she "didn't want to chance . . . ." And, if victim walked in the opposite direction, she would "have been away from home, and I'm not familiar with the area, so I really didn't want to chance it." Appellant then sped off.

The trial court, characterizing appellant as a "persistent defendant," found that appellant "intended to commit [abduction], certainly by way of impeding the progress of the victim . . . ." The court concluded that appellant had the intent to deprive victim of her personal liberty.

In denying appellant's motion to set aside the verdict, the trial court further found that appellant was rebuffed from the beginning, the victim having no interest in appellant and that appellant pursued victim and impeded her progress and her efforts to return home "both physically by himself and through his vehicle." The trial court viewed the incident on the street near the grocery store and the incident with the vehicle as part of the same process. The trial court concluded appellant had an "intent to impede and to detain and deny the victim of her personal liberty."

This appeal follows.

ANALYSIS

Standard of Review

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). This means the jury's verdict cannot be overturned on appeal unless no "'rational trier of fact'" could have come to the conclusion it did.

Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting

Jackson v. Virginia, 443 U.S. 307, 319 (1979)); Pease v. Commonwealth, 39 Va. App. 342, 355,

573 S.E.2d 272, 278 (2002) (*en banc*) ("We let the decision stand unless we conclude no rational

juror could have reached that decision."), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). Under this

standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial

established guilt beyond a reasonable doubt.'" Myers v. Commonwealth, 43 Va. App. 113, 118,

596 S.E.2d 536, 538 (2004) (citation omitted and emphasis in original). It asks instead whether

"'any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt.'" Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at

319). "'This familiar standard gives full play to the responsibility of the trier of fact fairly to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts.'" Id. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at

319). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion

were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

Further, a fact finder's resolution of conflicting facts, as well as competing inferences,

receives "the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App.

605, 608, 633 S.E.2d 229, 231 (2006).

### Intent to Deprive

Appellant contends the evidence was insufficient to prove he had intended to deprive

victim of her personal liberty. He maintains the evidence only indicates appellant was a

persistent suitor "who was too slow in taking no for an answer." The evidence, he asserts, would

indicate appellant had a romantic interest in her.

Code § 18.2-47(A) states:

> Any person who, by force, intimidation or deception, and without legal justification[3] or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction."

(Footnoted added).

When a "statute makes an offense consist of an act combined with a particular intent, proof of such intent is as necessary as proof of the act itself and must be established as a matter of fact." Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). "Intent is the purpose formed in a person's mind and may be, and frequently is, shown by circumstance[s]" including "[his] conduct" and "his statements." Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969).

> The specific intent to commit [a crime] may be inferred from the conduct of the accused if such intent flows naturally from the conduct proven. Where the conduct of the accused under the circumstances involved points with reasonable certainty to a specific intent to commit [the crime], the intent element is established.

Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 674 (1995) (citation omitted).

"[W]hether the required intent exists is generally a question for the trier of fact." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). A trial judge's factual finding will not be disturbed on appeal unless plainly wrong or without evidence to support it. Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993).

---

[3] Appellant does not challenge the force, intimidation or deception and without legal justification elements of the offense.

"To prove that the defendant intended to deprive the victim of her personal liberty, the Commonwealth must prove that the defendant intended to deny the victim her freedom from bodily restraint." Burton v. Commonwealth, 281 Va. 622, 627, 708 S.E.2d 892, 894 (2011).

The facts here clearly show that appellant detained the victim. Appellant initially stood in front of victim blocking her path. He then grabbed her jacket and subsequently positioned his truck so that she could not walk around it. The question then becomes whether appellant's conduct indicated his intent to deprive her of her liberty, or whether appellant had some other purpose in detaining victim such as to create a romantic relationship.

Here, after considering "the totality of the evidence, the totality of the circumstances," the trial court concluded that all of appellant's actions were part of a "process" and that he had the "intent to impede and to detain and deny the victim of her personal liberty." This was a factual determination that we do not disturb on appeal unless we find it to be plainly wrong or without evidence to support it.

In the record before this Court, we find evidence to support that conclusion. In consideration of all of the circumstances, we find appellant's act of pursuing victim, obstructing her path, and grabbing her collar, all relevant to whether he had the intent to deprive her of her liberty. It is a fair inference that appellant's intent to deprive victim of her personal liberty by grabbing her and turning her around was not abandoned when he blocked her path with his truck. From these facts, and the lack of evidence to prove otherwise, the trial court rejected the argument that appellant was nothing more than a persistent suitor. Considering our standard of review, we conclude that the trial court reasonably inferred that appellant's actions were inconsistent with an intent to create a romantic relationship with victim, and were consistent with attempting to abduct her with the purpose of withholding her personal liberty.

CONCLUSION

We conclude that the Commonwealth's evidence proved appellant possessed the intent to deprive victim of her personal liberty.  Therefore, appellant's conviction is affirmed.

<u>Affirmed.</u>

Kelsey, J., concurring.

I write separately to emphasize two related points.

First, the trial court convicted Gray not of abduction, but of attempted abduction. Neither Brown v. Commonwealth, 230 Va. 310, 337 S.E.2d 711 (1985), nor any of the other cases discussing the multiple-punishment doctrine of double jeopardy apply to a charge of attempted abduction. We need not determine whether any detention was an "intrinsic" or "inherent" element of the detention-plus crime, Pryor v. Commonwealth, 48 Va. App. 1, 6, 628 S.E.2d 47, 49 (2006), because attempted abduction is not a detention crime. It is an *attempted* detention crime.[4] As a result, we only ask whether Gray committed a direct, ineffectual act in furtherance of an intended detention of the victim. As the majority correctly holds, he did — several actually. The Brown abduction doctrine has no legal or logical application in this context.

Second, even if Brown applied to attempted abductions and even if the only detention Gray committed was intrinsic to, or inherent in, his assault and battery, Gray would not be entitled to a judicial vacatur of his attempted abduction conviction. Brown applies only when "the guarantee of double jeopardy may be implicated." Walker v. Commonwealth, 272 Va. 511, 516, 636 S.E.2d 476, 479 (2006). It is inapplicable to a case in which "we are not concerned with the application of the double jeopardy clause" because the "constitutional guarantee is not pertinent to the resolution" of the case. Id.

The Brown remedy, when judicially available, tracks the remedy for double jeopardy. The proper remedy for violations of the multiple-punishment doctrine of double jeopardy is the

---

[4] "The only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." Lawlor v. Commonwealth, 285 Va. 187, 225, 738 S.E.2d 847, 869 (2013). It is irrelevant that the detention "was merely useful to perpetrating a detention-plus crime . . . ." Pryor, 48 Va. App. at 6, 628 S.E.2d at 49.

judicial vacatur of the lesser charge, not the greater charge. See generally Brown, Tommy v. Commonwealth, 222 Va. 111, 116, 279 S.E.2d 142, 145 (1981); Clayton Motors v. Commonwealth, 14 Va. App. 470, 473, 417 S.E.2d 314, 316 (1992). No double jeopardy precedent authorizes either a trial or an appellate court, in a multiple-punishment context, to vacate the greater charge in favor of the lesser charge.

Here, the trial court convicted Gray of attempted abduction (a felony) as well as assault and battery (a misdemeanor). Relying on the Brown abduction doctrine, Gray argues that he received two punishments for essentially the same offense. See Appellant's Br. at 18. By his own election, however, Gray foreclosed any judicial review of the issue by failing to challenge on appeal the assault and battery conviction. Because of that decision, we have no authority to provide the only relief requested by Gray: dismissal of the greater, not the lesser, charge. We cannot treat a defendant who appeals his misdemeanor less favorably than a defendant who does not, which is just what would happen if we left an appealing defendant with a felony conviction while allowing a non-appealing defendant to walk away with only a misdemeanor conviction.

No accepted understanding of double jeopardy principles puts the remedy entirely in the hands of the defendant, allowing him to choose which conviction he wants to deem void.[5] Nor does any other constitutional principle allow a defendant, by the simple expediency of appealing only one of his two allegedly duplicative convictions, to unilaterally dictate the scope of our

---

[5] For example, a defendant cannot simply plead guilty to the lesser charge, consent to the entry of a conviction order, and thereby preclude the continued prosecution of, and imposition of punishment for, the greater offense. Ohio v. Johnson, 467 U.S. 493, 501-02 (1984); see also Rea v. Commonwealth, 14 Va. App. 940, 944-45, 421 S.E.2d 464, 467-68 (1992). For similar reasons, a defendant cannot claim the protections of double jeopardy after receiving a "guilty verdict in the first of two successive prosecutions, when the defendant had been responsible for insisting that there be separate rather than consolidated trials." Johnson, 467 U.S. at 502 (summarizing Jeffers v. United States, 432 U.S. 137 (1977)). A defendant cannot by his own election separate conjoined charges and thereby successfully engineer a double jeopardy defense where none would otherwise exist.

judicial remedies — particularly when doing so gives him a result that he could have never received in the trial court.

The remedial principles applicable to double jeopardy are conceptually embedded in the <u>Brown</u> doctrine. It would be impracticable to suggest otherwise. If a defendant committed an assault and battery that also involved a detention (for example, a beating that lasted for an uninterrupted five minutes), a Commonwealth's Attorney would have the prosecutorial discretion to charge the defendant with abduction but not assault and battery. The defendant would have no grounds to object. <u>See</u> <u>Walker v. Commonwealth</u>, 47 Va. App. 114, 124-25, 622 S.E.2d 282, 287 (2005), <u>aff'd</u>, 272 Va. 511, 516-17, 636 S.E.2d 476, 479 (2006). It would make no sense to say that a prosecution of the same defendant on charges of abduction as well as assault and battery, if it led to convictions on both in violation of <u>Brown</u>, would give a defendant the absolute right to deselect the felony and accept only the misdemeanor. That result would shift the exercise of prosecutorial discretion from the prosecutor to the criminal defendant.

In sum, the <u>Brown</u> abduction doctrine has no legal or logical application to a conviction for attempted abduction. And even if it did, Gray's decision to challenge on appeal his felony conviction, but not his misdemeanor conviction, was an impermissible effort at securing a judicial remedy for which he has no just claim. If for no other reasons but these, Gray's challenge under <u>Brown</u> to his attempted abduction conviction cannot succeed.