COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Chaney
Argued at Fredericksburg, Virginia

UNPUBLISHED

JOSE PEDRO MARQUEZ MARTINEZ

MEMORANDUM OPINION* BY
v.      Record No. 0631-23-4          JUDGE VERNIDA R. CHANEY
                                         JUNE 11, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Sarah Miller, Assistant Public Defender (Office of the Public
Defender, on briefs), for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the Circuit Court of Fairfax County convicted Jose Pedro Marquez

Martinez on four counts of aggravated sexual battery. Martinez contends that the evidence was

insufficient to support the convictions because the complaining witness was not credible. This

Court holds that the record supports the jury's findings on witness credibility and that the evidence

sufficiently proved that Martinez committed the offenses. Therefore, this Court affirms the

judgment of the trial court.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

When K.D. was between six and eight years old, she lived with her mother, her stepfather, and her sibling in Manassas.[2] She visited her father, Ivan Ponce, and his girlfriend, Maria Ophelia Martinez (Ophelia), at their Fairfax County apartment on weekends. Martinez was Ponce's friend and often visited Ponce and Ophelia while K.D. was present at the apartment.

At trial, K.D. testified that on more than 20 occasions during her visits with her father, his friend, Martinez, touched her in her private part with his fingers. Because K.D. did not know another word for her private part, she used a diagram depicting the body of a female girl and circled the vagina. K.D. explained that Martinez touched her vagina, both under and over her clothing, moving his middle finger up and down "in sort of a cupping motion," and at times, he penetrated her. Martinez said nothing during the incidents, but he made "moaning sounds" while he touched her. K.D. felt "uncomfortable and weird." K.D. testified that the incidents occurred in the apartment hallway and the kitchen. At other times, K.D. sat on Martinez's lap in a chair in the living room while he touched her buttocks over and under her clothing with his hand. K.D. circled the buttocks on a diagram depicting a female child. When asked to describe how he touched her buttocks, K.D. opened and closed her hand in a grabbing motion. Martinez touched her buttocks over her clothing more than 10 times, and he touched her buttocks under her clothing more than 20 times. Also, Martinez often flirted with K.D. and sent her what appeared to be "kissy faces."

During cross-examination, defense counsel asked K.D. if Martinez had "ever put his finger inside your vagina?" to which K.D. replied, "Yes." When defense counsel said, "So earlier today

_____

[1] On appeal, this Court reviews "the evidence in the 'light most favorable' to the Commonwealth." *Pryor v. Commonwealth*, 48 Va. App. 1, 4 (2006) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). This Court also gives the Commonwealth the benefit of all inferences that can be fairly derived from that evidence. *Commonwealth v. Cady*, 300 Va. 325, 329 (2021).

[2] At the time of trial, K.D. was 11 years old.

you didn't say that?" K.D. replied, "Did they ask me that?" Defense counsel noted that when K.D. was asked to describe how Martinez touched her, she did not testify that Martinez inserted his fingers into her vagina, and K.D. stated, "I did." During re-direct examination, K.D. clarified that the hand motion she demonstrated during direct examination was intended to show how Martinez put his fingers in her vagina. K.D. explained that it was "difficult" for her to talk about what had happened and stated that she was "nervous."

K.D. did not remember where the other adults were when the touching occurred, but she admitted that she was never alone with Martinez in the apartment. She told her father and his girlfriend about the touching, but Ponce seemed confused, so K.D. thought he did not believe her. K.D. did not tell her mother about the abuse because she was "scared" and thought she would "get[] in trouble." She "didn't know what would happen because [she] was little." However, in 2019, when K.D. was in third grade, she attended a presentation at her school about "a girl being touched by her uncle," and decided to talk to a woman at the school and an officer about what had happened to her; K.D. then participated in a forensic interview after she reported the abuse.

Ophelia testified that K.D. visited "[e]very weekend days [sic] or every month." Ophelia explained that Martinez was a friend of Ponce's who used to come to the apartment "every weekend." Ophelia claimed that after K.D. told her Martinez had touched her, she spoke to Ponce about it "so they can fix that." She further explained that Martinez and K.D. often played together and that she had told Ponce "to not allow those type[s] of games." However, she never observed any unwanted touching between Martinez and K.D. Moreover, she did not know if Martinez and K.D. were ever alone in the apartment because she was often away.

K.D.'s mother, Ana, confirmed that K.D. visited Ponce three times a month. Ana stated that while K.D. did not tell her about the touching, she did disclose that she did not want to see her dad "ever again."

- 3 -

Fairfax County Police Detective Matthew Nilssen testified about his involvement in the investigation. During cross-examination, Detective Nilssen agreed that in various interviews, K.D. made inconsistent statements regarding what occurred between Martinez and herself. For example, K.D. reported in one interview that Martinez made her touch his bare penis, while in another interview, she said she had never seen his bare penis. In another interview, K.D. reported that Martinez kissed her on the mouth, using his tongue. On another occasion, she merely said he made kissy faces. K.D. also gave inconsistent accounts regarding which specific areas in the apartment the touching occurred and whether the touching occurred before or after bedtime. At trial, K.D. admitted that she previously said Martinez touched her only over her clothes and never on her skin. However, Detective Nilssen testified that in interviews with him, K.D. disclosed that the touching occurred both over and underneath her clothing.

Martinez took the stand in his own defense. He testified that he had known Ponce for eight years. He told the jury that he regularly went to Ponce's apartment and that K.D. often visited on weekends when she was eight years old. When asked if he ever played with K.D. while at the apartment, Martinez claimed, "she would play with me because she said she loved me like the grandfather that left her in Honduras." Martinez admitted that he held K.D. by "picking her up and throwing her up in the air," but he denied ever touching K.D. under her clothing or on her vagina. When asked if he had ever touched K.D.'s buttocks, Martinez said, "I think she thinks that because I would grab her to lift her up. I think she thinks that." Defense counsel asked for clarification, asking, "Did you ever put your hand on her butt and squeeze it?" to which Martinez replied, "Yes. When I was lifting her up. I would put her up high and I would put my hand there to hold her." Martinez said he never squeezed K.D.'s buttocks when she was sitting on his lap, and he denied that he ever forced her to sit on his lap. When asked if he ever followed K.D. to the bathroom, Martinez explained, "No. Just one time we bumped into each other. Because when you would drink, you

know, you would have to go to the bathroom a lot. But yeah, it was just joking and things like that." Martinez denied that he tried to touch K.D. "in a sexual way."

On cross-examination, Martinez admitted that when he was at the apartment, the group "would drink a lot." The prosecutor stated, "you indicated that [K.D.] touched every part of your body when she was jumping on you," and inquired if Martinez ever became "sexually aroused as [a] result of that touching?" to which Martinez responded, "No. I don't think so." Martinez clarified, "I don't believe that I had the intention of doing that. That's what I think." Martinez then admitted that he did not tell Detective Nilssen he grabbed K.D.'s buttocks when lifting her up to play, and he agreed that he lied to Detective Nilssen when he told him that he did not drink too much.

In his motions to strike, Martinez argued that K.D. was inherently incredible, given her "multiple conflicting statements" and the lack of corroborating evidence. The trial court denied the motions, stating, "I do not find as a matter of law that the alleged victim was inherently incredible, and there is additional corroboration of some of the allegations." After closing arguments, the jury convicted Martinez on four counts of aggravated sexual battery. Martinez noted this appeal.

ANALYSIS

"An accused is guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he complaining witness is less than 13 years of age . . . ." Code § 18.2-67.3(A)(1). "'Sexual abuse' means an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts." Code § 18.2-67.10(6)(a). "Intimate parts" are "the genitalia, anus, groin, breast, or buttocks . . . ." Code § 18.2-67.10(2). There is no dispute that K.D. was under the age of 13 at the time of the offenses. The question on appeal is whether Martinez sexually abused K.D., as she said he did, by touching her vagina and her buttocks.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Martinez argues that K.D.'s testimony was inherently incredible. His challenge rests on the various alleged inconsistencies in K.D.'s statements, including whether Martinez penetrated her with his penis, whether he forced her to touch his bare penis, whether he actually kissed K.D., whether the touching happened both over and under her clothes, and when and where the touching occurred in the apartment. On this record, this Court finds that the trial court did not err in concluding that K.D.'s testimony was not inherently incredible.

The law is clear that determining the credibility of the witnesses and the weight afforded their testimony "is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "Where credibility issues are resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010). This

Court must accept the jury's resolution on the credibility of a witness's testimony "unless, 'as a matter of law, the testimony is inherently incredible.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)). "In other words, this Court cannot say a witness' testimony is inherently incredible unless it is 'so contrary to human experience as to render it unworthy of belief.'" *Lambert*, 70 Va. App. at 759 (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).

We first address the sufficiency of K.D.'s testimony to support the convictions. K.D. testified that when she was between six and eight years old, she visited her father at his apartment on the weekends and that Martinez was often present. Despite K.D.'s tender years, Martinez "flirted" with K.D. and blew kisses at her. During stolen moments, Martinez repeatedly touched her private parts. K.D. testified that Martinez touched her buttocks over her clothing more than 10 times, he touched her buttocks under her clothing more than 20 times, and he rubbed her vagina with his fingers, over and underneath her clothing numerous times. On a diagram depicting a girl, K.D. circled the vagina and the buttocks. In explaining how he touched her buttocks, K.D. described a grabbing or squeezing motion. K.D. also described how Martinez placed his middle finger on her vagina and moved it up and down in a curling motion. At times, he penetrated her vagina. Martinez moaned while he touched her, which made K.D. feel "uncomfortable and weird." Contrary to Martinez's suggestion, K.D.'s testimony was not inherently incredible or so contrary to human experience as to render it unworthy of belief. Rather, K.D.'s testimony sufficiently established the elements of aggravated sexual battery and, standing alone, supported Martinez's

convictions. "[T]he testimony of a single witness, if found credible by the trial court and not found inherently incredible by this Court, is sufficient to support a conviction." *McCary v. Commonwealth*, 36 Va. App. 27, 41 (2001).

Although not required, additional evidence in the record corroborates K.D.'s testimony. Even though K.D. did not tell Ana about the abuse, she did say that she no longer wished to visit with her father. Further, Ophelia noticed that the "games" K.D. and Martinez played were inappropriate; she told Ponce not to allow those types of games. Ana and Ophelia both corroborated the fact that Martinez often visited the apartment when K.D. was there, and by Martinez's own admissions he regularly drank excessively and "played" with K.D. by putting his hand on her buttocks and throwing her up in the air. He also admitted she often sat on his lap, that she touched every part of his body, and that he was alone with her in the hallway on at least one occasion. When asked if he became sexually aroused when playing with K.D., Martinez merely responded, "I don't think so," and he conceded he lied to Detective Nilssen during his interviews. A reasonable fact finder could conclude that Martinez, who admittedly lied to Detective Nilssen, also lied at trial "to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). Thus, although not required to support his convictions, other evidence in the record corroborated K.D.'s testimony and supports the jury's credibility determination.

Nevertheless, Martinez contends that all the inconsistencies in K.D.'s prior statements necessarily rendered her trial testimony unbelievable as a matter of law. Indeed, many of K.D's responses during the trial showed that she did not remember certain details of the abuse and that she did not recall many of her prior statements. However, as the Commonwealth notes, many inconsistencies in K.D.'s testimony were not probative of whether Martinez touched her vagina or her buttocks. Martinez was not on trial for penetrating her with his penis, or for asking her to touch

his penis; nor does it matter if he kissed her with his tongue or merely blew "kissy faces" at her. Further, the fact that she testified inconsistently about whether the touching was accomplished over or under her clothing is of no moment because the statute prohibits both. And the fact that she seemed confused about where in the apartment specifically the touching occurred does not render her testimony unbelievable. A reasonable fact finder could easily determine that any inconsistencies in K.D.'s various statements arose from her youth, her fragile memory, the traumatic nature of the offenses, the fact that her assailant was a close friend of her father, the length of time that had passed, and her feelings of shame as demonstrated by her reluctance for her mother to learn of the abuse. *See Smith*, 56 Va. App. at 719 ("[A] 'victim's youth, fright and embarrassment [may] provide[] the jury with an acceptable explanation' for a victim's otherwise unexplainable statements or actions." (second and third alterations in original) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)).

Nor does K.D.'s delay in reporting undermine the jury's credibility determination. "The mere fact that a witness may have delayed in reporting knowledge of a case or given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 at 415. "This circumstance is appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.*

> When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree. So long as a witness deposes as to facts[,] which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony. If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.

*Smith*, 56 Va. App. at 718-19 (alteration in original) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)).

The inconsistencies in K.D.'s statements were brought to the court's attention and the jury and Martinez had the opportunity to argue their importance during his motions to strike and closing argument. Ultimately, the jury resolved the inconsistencies in K.D.'s testimony in favor of the Commonwealth, and we, as an appellate court, are bound by the jury's findings, which were wholly supported by the record. K.D.'s account, with all the inconsistencies in her testimony resolved, was sufficient to support Martinez's convictions for aggravated sexual battery.

CONCLUSION

K.D.'s testimony supported the convictions and was not inherently incredible. The jury's acceptance of that testimony was reasonable and was not plainly wrong. Therefore, this Court affirms Martinez's convictions for aggravated sexual battery.

*Affirmed.*